UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FREDERICK PERRY,          )
          PETITIONER )
                         )
                         )
          V.             )          Civil Action
                         )          No. 04-12529-RWZ
                         )
LUIS SPENCER,            )
          RESPONDENT )

PETITIONER'S MEMORANDUM IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

Respectfully submitted,

*Frederick Perry*

Frederick Perry
MCI-Norfolk
2 Clark St./P.O. Box 43
Norfolk, MA. 02056-0043

DATE: *August 13, 2005*

## TABLE OF CONTENTS

Table of Authorities ............................... i – vi

Issues Presented .................................... 1 – 2

Statement of Case .................................... 3 – 4

Statement of Relevant Facts ........................ 5 – 14

### THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
### THE DEFENDANT'S MURDER CONVICTION.

A.  The Evidence Presented at Trial Was Utterly
    Insufficient to Prove That the Defendant Committed
    Murder Under the Thgeory of Individual Liability. ...
    ...................................... 15 – 20

B.  The Evidence Presented at Trial Was Utterly
    Insufficient to Prove That the Defendant Committed
    Murder under a Theory of Joint Venture. ............
    ...................................... 20 – 23

C.  The Evidence Presented at Trial Was Utterly
    Insufficient to Prove Malice. ......................
    ...................................... 23 – 25

### THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE
### DEFENDANT'S CONVICTION OF KIDNAPPING.

    ...................................... 25 – 27

### THE TRIAL JUDGE IMPROPERLY EXCLUDED EXPERT
### TESTIMONY REGARDING MENTAL IMPAIRMENT OF A KEY
### PROSECUTION WITNESS.

    ............... 27 – 30

### THE IMPROPER ADMISSION OF INADMISSIBLE HEARSAY
### DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

    ...... 30 – 32

### THE ERRONEOUS ADMISSION OF THE DEFENDANT'S
### CUSTODIAL STATEMENTS DEPRIVED HIM OF A FAIR TRIAL.

    32 – 34

### The Defendant's Statements Were Involuntary
### and Were Obtained in Violation of Due Process.

    ...32 – 33

### The Defendant's Statements Were Obtained in
### Violation of His Miranda Rights.

    ........ 33 – 34

### VIOLATION OF THE DEFENDANT'S RIGHT TO BE PRESENT AT
### SIDEBAR DURING INDIVIDUAL JUROR VOIR DIRE DEPRIVED
### THE DEFENDANT OF A FAIR TRIAL.

    ......... 34 – 37

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL AT TRIAL AND ON DIRECT APPEAL IN
VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES . ..... 37 – 40

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL AT TRIAL WHEN DEFENDANT WAS COMPELLED TO TESTIFY
BY COUNSEL IN VIOLATION OF THE FIFTH, SIXTH AND
FOURTEENTH AMENDMENTS TO THE  CONSTITUTION OF THE
UNITED STATES. .............. 40 – 42

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL AT TRIAL WHEN COUNSEL FAILED TO REQUEST A
SPECIFIC UNANIMITY INSTRUCTION IN VIOLATION OF THE
FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE
CONSTITUTION OF THE UNITED STATES. .... 43 – 44

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL ON DIRECT APPEAL WHEN APPEALLATE COUNSEL
FAILED TO RAISE SIGNIFICAN AND OBVIOUS ISSUES. 44– 45

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE
DEFENDANT'S RIGHT TO A TELEPHONE CALL ISSUE
DURING DEFENDANT'S MOTION TO SUPPRESS CUSTODIAL
STATEMENT PROCEEDINGS. .......... 45 – 48

THE MOTION JUDGE'S DENIAL OF THE DEFENDANT'S MOTION
TO SUPPRESS PHYSICAL EVIDENCE DEPRIVED THE
DEFENDANT OF A FAIR TRIAL. ......... 48 – 51

THE PROSECUTION ERRED IN ASKING THE DEFENDANT TO COMMENT ON
THE CREDIBILITY OF PRIOR COMMONWEALTH WITNESSES.......
..................... 51 – 53

THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY DENYING
DEFENDANT'S MOTION FOR MISTRIAL AND DISMISSAL OF THE
INDICTMENT BASED ON LATE DISCLOSURE OF EXCULPATORY EVIDENCE.
..... .............. 53 – 55

THE BILL OF PARTICULARS WAS INSUFFICIENT IN THAT IT
FAILED TO SPECIFY PARTICULAR DATES AND TIMES FOR
WHICH THE COMMONWEALTH WAS RELYING UPON FOR THE
CRIMES AS CHARGED IN THE INDICTMENT..... 55 – 57

THE TRIAL JUDGE ERRED WHEN HE FAILED TO DISMISS FOR CAUSE
TWO VENIRE PERSONS IN VIOLATION OF THE DEFENDANT'S
RIGHT TO A TRIAL BY AN IMPARTIAL JURY PURSUANT TO THE
SIXTH AMENDMENT TO THE CONSTITUTION OF
THE UNITED STATES. ................... 57 – 61

A.   Violation of the Defendant's Statutory Right to
Make a Telephone Call Created a Substantial
Likelihood of a Miscarriage of Justice..... 61 – 64

Conclusion ........................................... 64

Record Appendix .................................. 65 - 72

  R.A. # 1, Proof of Malice Language .................... 65

  R.A. # 2, Constitutional Amendments Wording ........... 66

  R.A. # 3, Judge's Credibility Instruction ............. 67

  R.A. #'s 4 - 5 Amended Bill of Particulars ........68 - 69

  R.A. # 6, Colloquay Between Judge and Juror # 1-5 ..... 70

  R.A. # 7, Colloquay Between Judge and Juror # 1-9 ..... 71

  R.A. # 8, M.G.L., c. 276, § 33A ...................... 72

TABLE OF AUTHORITIES

Aldridge v. United States        283 U.S. 308 .............. 58

Andres v. United States          333 U.S. 740 .............. 43

Arizona v. Fulminate             499 U.S. 279 .............. 32

Bourjaily v. United States       483 U.S. 171 .............. 30

Brady v. Maryland                373 U.S. 83 ........... 53, 55

Brinegar v. United States        338 U.S. 160 .............. 49

Bryant v. Vose                   785 F.2d 364 .............. 33

California v. Hodari D.           499 U.S. 621 .............. 62

Carlo v. City of Chino           105 F.3d 493 ...... 45, 46, 61

Chapman v. California            386 U.S. 18 .............. 61

Cleveland Bd. of Educ. v.

          Loudermill             470 U.S. 532 .......... 45, 61

Commonwealth v. Banfill          413 Mass. 1002 ........ 25, 26

Commonwealth v. Bryant           390 Mass. 729............. 62

Commonwealth v. DiRenzo          44 Ma.App.Ct. 95 ......... 32

Commonwealth v. Flynn            420 Mass. 818 ......... 19, 20

Commonwealth v. Grey             399 Mass. 469 ........... 23

Commonwealth v. Johnson          422 Mass. 420 ........... 47

Commonwealth v. Judge            420 Mass. 433 ........... 34

Commonwealth v. Kaufman          381 Mass. 301 ........... 49

Commonwealth v. Kickery          31 Ma.App.Ct. 720 ....... 25

Commonwealth v. Larkin           429 Mass. 426 ........... 63

Commonwealth v. Long             17 Ma.App.Ct. 707 ....... 53

Commonwealth v. Lynch            428 Mass. 617 ........... 21

Commonwealth v. Mahnke           368 Mass. 662 ........... 24

Commonwealth v. McLeod        394 Mass. 747 .............. 17

Commonwealth v. Miranda       22 Ma.App.Ct. 10 .......... 45

Commonwealth v. Owens         414 Mass. 603 ............. 34

Commonwealth v. Plunkett      422 Mass. 634  ............. 23

Commonwealth v. Rhoades       379 Mass. 810 .........17, 22

Commonwealth v. Saferian      366 Mass. 96 ............. 40

Commonwealth v. Salemme       395 Mass. 601 ......... 15, 22

Commonwealth v. Santiago      425 Mass 491 ............. 17

Commonwealth v. Sneed         413 Mass. 387 ............. 24

Commonwealth v. Sowell        34 Ma.App.Ct. 229 ......... 37

Commonwealth v. Susi          394 Mass. 786 ............. 58

Commonwealth v. Toney         385 Mass. 575 ............. 23

Commonwealth v. Tripplett     398 Mass. 561 ............. 52

Commonwealth v. Vizcarrondo   427 Mass. 392 ............. 24

Commonwealth v. White         37 Ma.App.Ct. 757 ......... 35

Commonwealth v. Williams      428 Mass. 383 ............. 24

Commonwealth v. Wilson        381 Mass. 114 ............. 53

Coppola v. Powell             878 F.2d 1562 ............. 41

Davis v. Alaska               415 U.S. 315 ............. 27

Dennis v. United States       339 U.S. 162 ............. 58

Douglas v. California         372 U.S. 353 ............. 44

Dunaway v. New York           442 U.S. 200 ............. 62

Duncan v. State of Louisiana  391 U.S. 145 ............. 58

Edwards v. Arizona            451 U.S. 477 ............. 33

Evitts v. Lucey               469 U.S. 387 ............. 44

Francis v. Franklin           471 U.S. 307 ............. 15

Galloway v. United States          319 U.S. 372 .............. 15

Gomez v. United States             490 U.S. 858 .............. 34

Gray v. Greer                      800 F.2d 644 ...... 37, 38, 44

Gray v. Mississippi                481 U.S. 648 .............. 60

Greenberg v. United States         280 F.2d 472 .............. 51

Harris v. New York                 401 U.S. 222 .............. 40

Haynes v. Washington               373 U.S. 503 .............. 46

Idaho v. Wright                    497 U.S. 805 .............. 30

Irvin v. Dowd                      366 U.S. 717 .............. 58


Jackson v. Denno                   378 U.S. 368 .............. 32

Johnson v. Louisiana               406 U.S. 356 .............. 43

Johnson v. Singletary              883 F.SUpp. 1535 .......... 40

Keenan v. Hall                     83 F.3d 1083 .............. 46

Kentucky v. Stincer                482 U.S. 730 .............. 34

Kimmelman v. Morrison              477 U.S. 365 .............. 37

Larson v. Tansy                    911 F.2d 392 .............. 35

Lewis v. United States             146 U.S. 370 .............. 34

Mathis v. United States            391 U.S. 1 ................ 63

Michigan v. Tucker                 417 U.S. 433 .............. 46

Minnick v. Mississippi             498 U.S. 146 .............. 33

Miranda v. Arizona                 384 U.S. 436... 33, 34, 47, 62

New York v. Quarles                467 U.S. 649 .............. 46

Oregon v. Elstad                   470 U.S. 298 .............. 47

Pea v. United States               397 F.2d 627 .............. 32

Pennsylvania v. Ritchie            480 U.S. 39 ............... 27

Quinn v. United States            349 U.S. 155 .............. 41

Ross v. Oklahoma                  487 U.S. 81 ........... 58, 60

Russell v. Inited States          369 U.S. 749 .............. 56

Sartor v. Arkansas National

                 Gas Corp.  321 U.S. 620 .............. 51

Sgro v. United States             287 U.S. 206 .............. 49

Spinelli v. United States         393 U.S. 410 .............. 49

Stansbury v. California           511 U.S. 318 .............. 62

Strandberg v. City of Helena      791 F.2d 744 .............. 46

Strickland v. Washington          466 U.S. 668 ...... 37, 40, 48

Ullman v. United States           350 U.S. 422 .............. 41

United States v. Abreu            952 F.2d 1458 ............. 56

United States v. Agurs            427 U.S. 97 ........... 53, 54

United States v. Akitoye          923 F.2d 221 .............. 51

United States v. Alessandrello    637 F.2d 131 ............. 36

United States v. Billingsly       766 F.2d 1015 ............ 35

United States v. Butt             955 F.2d 77 .............. 27

United States v. Charest          602 F.2d 1015 ............ 49

United States v. Cole             41 F.3d 303 .............. 51

United States v. Cruikshank       92 U.S. 542 .............. 55

United States v. Crutcher         405 F.2d 239 ............. 35

United States v. dela Cruz-

                Paulino  61 F.3d 986 .............. 15

United States v. Devin            918 F.2d 280 ............. 54

United States v. Echeverry        719 F.2d 974 ............. 43

United States v. Gaudin           515 U.S. 506 ............. 16

United States v. Gonzalez-
              Maldonado    115 F.3d 9 ............... 28

United States v. Goodwin    470 F.2d 893 .............. 41

United States v. Gordon    829 F.2d 119 .......... 35, 36

United States v. Johnson    461 F.2d 285 .............. 50

United States v. Lindstrom    698 F.2d 1154 ............. 28

United States v. Luciano-
              Mosquera    63 F.3d 1142 .............. 15

United States v. Moore    923 F.2d 910 .............. 27

United States v. Neff    10 F.3d 1321 .............. 35

United States v. Partin    493 F.2d 750 .............. 28

United States v. Payseno    782 F.2d 832 .............. 43

United States v. Pollack    534 F.2d 964 .............. 53

United States v. Robinson    956 F.2d 1388 ............. 28

United States v. Shifman    124 F.3d 31 ............... 21

United States v. Sullivan    85 F.3d 743 ............... 53

United States v. Taylor    54 F.3d 967 .............. 21

United States v. Van Arsdell    475 U.S. 674 .............. 30

United States v. Ventresca    380 U.S. 102 .............. 48

Vitek v. Jones    445 U.S. 480 .......... 46, 61

Wainwright v. Sykes    433 U.S. 72 ............... 41

Wainwright v. Witt    469 U.S. 412 .............. 58

Washington v. Texas    388 U.S. 14 .............. 27

Weeks v. United States    232 U.S. 383 ............. 48

White v. Illinois    503 U.S. 346 ............. 30

Wilson v. United States    232 U.S. 563 ............ 28

Zant v. Stephens                462 U.S. 862 ........ 16, 18, 27

Zurcher v. Stanford Daily       436 U.S. 547 ..........  48, 49

OTHER AUTHORITIES CITED

ABA Standards for Criminal Justice

                              4-5.2, 21-2.2  ............  41

Fifth Amendment to the United States Constitution

................................... 15, 32, 40, 41, 42, 43, 46

Fourteenth Amendment to the United States Constitution    ˙15

.................... 30, 32, 34, 37, 40, 42, 43, 45, 46, 57, 63

Fourth Amendment to the United States Constitution ......  48

M.G.L. c. 265, § 26  ....................................  25

M.G.L. c. 276, § 33 A ..............................  62, 64

M.G.L. c. 278, § 33 E ...................................  64

Sixth Amendment to the United States Constitution    27, 30

...........................  34, 37, 40, 42, 43, 44, 56, 57

Wharton's Criminal Law and Procedure, § 1760 @ 553 ......  56

ISSUES PRESENTED

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
THE DEFENDANT'S MURDER CONVICTION.

A.  The Evidence Presented at Trial Was Utterly
Insufficient to Prove That the Defendant Committed
Murder Under the Thgeory of Individual Liability.

B.  The Evidence Presented at Trial Was Utterly
Insufficient to Prove That the Defendant Committed
Murder under a Theory of Joint Venture.

C.  The Evidence Presented at Trial Was Utterly
Insufficient to Prove Malice.

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE
DEFENDANT'S CONVICTION OF KIDNAPPING.

THE TRIAL JUDGE IMPROPERLY EXCLUDED EXPERT
TESTIMONY REGARDING MENTAL IMPAIRMENT OF A KEY
PROSECUTION WITNESS.

THE IMPROPER ADMISSION OF INADMISSIBLE HEARSAY
DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

THE ERRONEOUS ADMISSION OF THE DEFENDANT'S
CUSTODIAL STATEMENTS DEPRIVED HIM OF A FAIR TRIAL.

The Defendant's Statements Were Involuntary
and Were Obtained in Violation of Due Process.

The Defendant's Statements Were Obtained in
Violation of His Miranda Rights.

VIOLATION OF THE DEFENDANT'S RIGHT TO BE PRESENT AT
SIDEBAR DURING INDIVIDUAL JUROR VOIR DIRE DEPRIVED
THE DEFENDANT OF A FAIR TRIAL.

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL AT TRIAL AND ON DIRECT APPEAL IN
VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES .

- 1 -

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL AT TRIAL WHEN DEFENDANT WAS COMPELLED TO TESTIFY
BY COUNSEL IN VIOLATION OF THE FIFTH, SIXTH AND
FOURTEENTH AMENDMENTS TO THE  CONSTITUTION OF THE
UNITED STATES.

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL AT TRIAL WHEN COUNSEL FAILED TO REQUEST A
SPECIFIC UNANIMITY INSTRUCTION IN VIOLATION OF THE
FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE
CONSTITUTION OF THE UNITED STATES.

THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL ON DIRECT APPEAL WHEN APPEALLATE COUNSEL
FAILED TO RAISE SIGNIFICAN AND OBVIOUS ISSUES.

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE
DEFENDANT'S RIGHT TO A TELEPHONE CALL ISSUE
DURING DEFENDANT'S MOTION TO SUPPRESS CUSTODIAL
STATEMENT PROCEEDINGS.

THE MOTION JUDGE'S DENIAL OF THE DEFENDANT'S MOTION
TO SUPPRESS PHYSICAL EVIDENCE DEPRIVED THE
DEFENDANT OF A FAIR TRIAL.

THE PROSECUTION ERRED IN ASKING THE DEFENDANT TO COMMENT ON
THE CREDIBILITY OF PRIOR COMMONWEALTH WITNESSES.

THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY DENYING
DEFENDANT'S MOTION FOR MISTRIAL AND DISMISSAL OF THE
INDICTMENT BASED ON LATE DISCLOSURE OF EXCULPATORY EVIDENCE.

THE BILL OF PARTICULARS WAS INSUFFICIENT IN THAT IT
FAILED TO SPECIFY PARTICULAR DATES AND TIMES FOR
WHICH THE COMMONWEALTH WAS RELYING UPON FOR THE
CRIMES AS CHARGED IN THE INDICTMENT.

THE TRIAL JUDGE ERRED WHEN HE FAILED TO DISMISS FOR CAUSE
TWO VENIRE PERSONS IN VIOLATION OF THE DEFENDANT'S
RIGHT TO A TRIAL BY AN IMPARTIAL JURY PURSUANT TO THE
SIXTH AMENDMENT TO THE CONSTITUTION OF
THE UNITED STATES.

Violation of the Defendant's Statutory Right to
Make a Telephone Call Created a Substantial
Likelihood of a Miscarriage of Justice.

- 2 -

## STATEMENT OF CASE

1.   Defendant, Frederick Perry was indicted by a Franklin County Grand Jury on June 16, 1995 for murder, kidnapping, and aggravated rape of Billy Paige.

2.   Attorney Janet Kenton-Walker was appointed to represent the defendant.

3.   The Honorable William H. Welch heard and denied the defendant's motion to suppress statements.

4.   The defendant went to trial on March 3, 1997 before Judge Welch and a jury.

5.   At the close of the Commonwealth's evidence the trial judge allowed the defendant's motion for required findings of not guilty as to the rape.

6.   The jury convicted the defendant of first degree murder committed with extreme atrocity or cruelty and kidnapping. The verdict slip did not specify whether the jury's verdict was based upon a theory of individual liability or joint venture.

7.   The defendant was sentenced to life imprisonment for the murder conviction and to a concurrent term of 15-20 years in prison for the kidnapping conviction.

8.   Defendant filed a timely notice of appeal.

9.   The defendant filed his appeal in the Massachusetts Supreme Judicial Court in December of 1999.

10. The Supreme Judicial Court heard oral arguments in May of 2000.

11. On August 2, 2000 the Supreme Judicial Court affirmed the defendant's convictions.

12. On December 4, 2000 defendant filed a Motion for New Trial in the Superior Court;

13. On November 5, 2001, Ford, Daniel A., J. assigned to New Trial Motion;

14. On november 26, 2001 New Trial Motion denied with out a hearing;

15. On February 6, 2002 defendant filed a Motion for Leave to Appeal Denial of Motion for New Trial;

16. On October 5, 2004 Motion for Leave to Appeal was denied.

## STATEMENT OF RELEVANT FACTS [2]

### PRETRIAL PROCEEDINGS RESPECTING THE DEFENDANT'S MOTION TO SUPPRESS STATEMENTS.

On June 6, 1995, at approximately 3:00 a.m., State Troopers Nartowicz and Hart went to the Franklin County House of Correction, where Frederick was serving a sentence on an unrelated matter, to question Frederick regarding the death of Paige. Hg. 1/27, 136-37, 146-47, 156-57.                     During that time Frederick was "allowed to leave the room one time," when he was escorted to the bathroom by Trooper Hart, who admitted that he was "concerned that [Frederick] was going to make phone calls that morning." Tr.8/76-77.                     Upon leaving the jail at approximately 6:19 a.m., the troopers specifically asked correctional officials to not give Frederick access to a telephone because they feared that he might tip off other suspects. Hg. 1/161, Tr. 8/77,83.

During his interrogation at the jail, the defendant gave the police both an oral statement and a five-page written statement, which were introduced against him at trial.    Before trial, the defendant moved to suppress

---

[1]    References herein will be abbreviated as follows: to the trial transcript (Tr. volume/page); to the hearing on the motion to suppress statements (Hg. volume/page); and to the record appendix (R. page).

[2]    Since there are numerous persons involved in the case with the last name "Perry," the defendant and others will be referred to by first name.

these statements.    In his motion to suppress, he asserted, *inter alia*, that he had repeatedly expressed his desire to speak with an attorney, rendering subsequent questioning by the troopers a violation of his <u>Miranda</u> rights. (R. 31-32, 70-74)          His repeated requests were ignored, and the troopers told him that he did not need a lawyer. Hg. 1/176, 181, 184, 211, 217, 219, 225.                    The defendant further asserted that because of a longstanding mental illness, his statements were not free and voluntary and were not the product of a rational intellect. (R. 33-35, 74-81)

Dr. Harold Bursztajn, a Board-certified forensic psychiatrist, testified that at the time of the interrogation, Frederick was suffering from a longstanding major mental illness, either a mood disorder or a delusional disorder, which caused him to lose concentration and to become increasingly helpless, hopeless, and unable to resist complying with authority over time. Hg. 3/22, 26-27, 35, 96. In Dr. Bursztajn's expert opinion, Frederick's statements to the police became involuntary at some point during the interview due to his mental illness. Hg. 3/46, 92.

### III. PROCEEDINGS AT TRIAL.

Near the beginning of the jury empanelment process, the trial judge asked whether "Mr. Perry want[ed] to be present" at side bar for individual juror *voir dire*.

Defense counsel responded, "No, Your Honor, for this I would rather have him sit back there." Tr. 1/25. The trial judge proceeded to conduct individual sidebar *voir dire* in defendant's absence over a two-day period. There is nothing in the record indicating that defense counsel consulted with the defendant regarding the jurors' responses at sidebar or about his absence from sidebar.

**B.    The Commonwealth's Case.**

The Commonwealth presented no evidence as to any acts of violence individually committed by the defendant after January 1995, aside from evidence of Frederick's admission that he slapped Paige once on the day he died, several hours before his death, in the last week of March or first week of April, 1995. Tr. 8/112-13.

The Commonwealth presented extensive evidence that persons other than the defendant beat Paige on numerous occasions, both within Frederick's presence and outside of it. Michelle King testified that "rough horseplay" was common at the Perry home. Tr. 5/177. She testified that Danny Nauman beat Paige in Frederick's presence in early December. Tr. 5/163.                           Frank Parker testified that he observed Clinton "slamming" Paige in the throat and raking keys over Paige's forehead in Frederick's presence. Tr.6/62-63.

The Commonwealth introduced Frederick's statements

- 7 -

to the police describing violent acts by others in his presence. Frederick told the police that Danny Nauman burned Paige with a hot butter knife (Tr. 8/109) and that Clinton, Roger, and Richard often beat Paige in his presence. Tr. 8/57, 110, 111, 115. Frederick also stated to police that Clinton beat Paige with a hacksaw, dumbbell bars, and a wooden club, and that Clinton beat Paige more than the others did. Tr.8/59, 111, 115. According to Frederick's statement, he tried to tell Clinton not to beat Paige anymore, but Clinton wouldn't listen. Tr. 8/110. Frederick told police that "we were all a little scared of Clinton." Tr. 8/111.

There was also evidence that Paige was beaten outside of the defendant's presence. Frank Parker testified that during January 1995 he observed Clinton beating Paige in the parlor while Frederick was in the kitchen. Tr.6/59. Frederick told police that Paige told him that while Frederick was out one day, Clinton beat Paige and hit his hand with a hammer, breaking and cutting his fingers. Tr. 8/110. Finally, Frederick stated that on the day Paige died, just before his death, Clinton went upstairs alone and struck Paige. Tr. 8/113.

New Hampshire medical examiner James Kaplan, M.D., testified that he responded to the discovery of Billy Paige's body on May 23, 1995. Tr. 7/54. The body was substantially decomposed and reflected evidence of prolonged immersion in water and insect larvae. Tr.

- 8 -

7/146-149, 164, 208. Dr. Kaplan conducted an autopsy the following day. Tr. 7/61. Kaplan candidly acknowledged, however: "The actual cause of death I cannot be sure of." Tr. 7/115. Indeed, according to Dr. Kaplan, the evidence "strongly suggested" that Paige died of lung infection or pneumonia. Tr. 7/115-119.

The Commonwealth presented substantial evidence indicating that Paige was living at the Perry home voluntarily. Clifford Paige, the victim's brother, testified that when Paige arrived in Greenfield on December 6, Paige asked to stay with Clifford, but Clifford said no. Paige then said he was going to Fred's house. Tr. 3/61-63, 79 Michelle King testified that in December 1994 she offered to let Paige stay at her apartment, but he said he wanted to stay where he was. Tr. 5/194-200.

Prosecution witness Laura White, who testified regarding her observations at the Perry home, acknowledged on direct examination that she had a memory problem respecting the chronological sequencing of events. Tr. 5/255. Defense counsel moved, *inter alia*, that all of the counseling records regarding Ms. White should be produced to the defendant. Tr. 6/12.[8] The After reviewing these records, defense counsel noted that the records indicated

- 9 -

that the witness had a long history of severe substance abuse, including several hospitalizations, that she was using heroin extensively in 1994 and 1996, that in 1997 she reported that she couldn't remember things and felt crazy, that she was not currently free from the effects of heroin, that she had been deceitful to her therapists, and that there was evidence of an underlying psychiatric disorder, including a dissociative disorder. Tr.8/4-6. Defense counsel moved, *inter alia*, that the defense expert, Dr. Bursztajn, be allowed to examine the psychiatric records and opine before the jury respecting the effects of the witness' chronic substance abuse. Tr.8/11. She suffered flashbacks, had a poor memory, and got easily confused. that she was very forgetful, and that recently she had trouble remembering conversations she had with people. Tr.9/22.

Dr. Bursztajn was permitted to testify regarding the symptoms of post-traumatic stress disorder and dissociative disorder, including memory problems associated with those disorders. Tr. 10/82-85. Defense counsel requested permission to have Dr. Bursztajn testify regarding the effects of cannabis disorder and

---

Defense counsel also moved for mistrial and dismissal of the indictment on the ground that the Commonwealth had deliberately withheld exculpatory evidence and requested, in the alternative, that the testimony of the witness should be stricken or that there should be a competency hearing prior to any further testimony. Tr. 6/4,12. These motions were denied. Tr. 6/28, 8/8-10, 8/20.

prolonged heroin abuse, making an offer of proof as to his proposed testimony that prolonged and chronic marijuana use leads to cannabis disorder, and that both cannabis disorder and protracted heroin use may result in inability to remember and confabulation. Tr. 10/85-87. Over the defendant's objection, the judge refused to permit Dr. Bursztajn to testify as to cannabis disorder or heroin abuse, stating: "I think I would not permit that, because that goes beyond, I think, what's been testified to." Tr. 10/84, 86-88.

Over objection, the trial judge admitted *de bene* Melissa Terry's testimony regarding an out-of-court statement made by Lena Perry, which the Commonwealth asserted was not hearsay because it constituted a statement by a co-venturer. Tr. 5/240. l effect of all of those injurie Melissa Terry was permitted to testify that she heard Paige yelling that he had to go to the bathroom and heard Lena Perry respond that "she wasn't in charge of him...Freddy was." Tr. 5/240.

There was no evidence presented at trial that Lena Perry ever participated in violent acts done to Paige.

After the Commonwealth rested, the defendant renewed his objection to the testimony regarding Lena Perry's statement on the ground that the Commonwealth had not proved that Lena Perry was a joint venturer. The judge overruled the objection. Tr. 9/47-50.

- 11 -

The defense presented the testimony of Dr. Richard Saferstein, a forensic scientist, who testified that the hairs on the pool cue could have emanated from Frederick, Richard, or Roger Perry, but not from Clinton or Paige. Tr. 9/89-92.              Raymond Matthews testified that on various occasions, Frederick went with him to places outside the Perry home and Paige did not accompany them.              Dr. Michael Baden, a forensic expert, testified that many of the characteristics visible in the photographs depicting Paige's body were due to post-mortem changes from enzyme release and decomposition. Tr. 11/44, 59-60, 63-64, 70-73.[2] There was testimony presented that certain bottom-feeding fish live in the quarry where Paige's body was found. Tr. 9/113-115.

The defense presented expert testimony challenging the voluntariness of Frederick's custodial statements. Dr. Bursztajn testified that he conducted a forensic evaluation of Frederick, including an MMPI test. In Dr. Bursztajn's opinion, at the time he was interviewed by the police, Frederick had a major mental disorder in the mood/delusional spectrum, specifically major depressive disorder with paranoid features, which rendered his confession neither valid nor voluntary. Tr. 10/68-74. A

Frederick Perry took the stand and testified in his own defense. He described important events of his life prior to meeting Billy Paige, including his difficulty maintaining employment, his father's death, and the break-up of his marriage. Tr.12/3-26. He testified that while staying in Florida,

Danny Nauman and Wendy Poirier beat up Paige in a fight, during which Frederick did not touch Paige. Tr.12/67-71.

Frederick testified that after he and Paige moved to the Perry home, numerous incidents of violence occurred which were perpetrated or initiated by Clinton Maynard. Clinton often went upstairs and hit Paige with objects. Tr. 12/90-92. Clinton hit Paige with a piece of wood. Tr. 12/94. On one occasion in January when Frederick was not at home, Clinton cut Paige's finger. Tr. 12/99. On another occasion, Clinton broke Paige's finger. Tr. 12/111-112. In January, Clinton stabbed Paige in the arm with a knife. Tr. 12/109. Clinton scraped a hacksaw against Paige's head, cutting it. Tr. 12/120.[1] In addition to Clinton's acts, Danny Nauman burned Paige's arm with butter knife on Christmas day. Tr. 12/75-79.

Frederick testified that the violence against Paige only occurred when Clinton was there. Tr. 12/96. Frederick told Paige he couldn't stop Clinton. Tr.12/96. Frederick testified that, to some extent, he tried to stop Clinton from hurting Paige.

Frederick testified that he attempted to provide medical assistance to Paige. After Clinton cut Paige's finger, Frederick asked Paige if he wanted to go to the emergency room, but Paige refused. Tr.12/103.

Frederick testified that Paige stayed at Chapman

- 13 -

Street even though Frederick told him to leave. Tr.12/82,

At the close of the Commonwealth's evidence, the defendant filed a motion for a required finding of not guilty. Tr. 9/50. At the close of the defense evidence and again at the close of all of the evidence, the defendant renewed that motion. Tr. 13/103, 174. The trial judge allowed the portion of the defendant's motion as to rape and first degree felony murder, and denied the remainder of the motion. Tr. 9/65, 13/103, 174.

In closing argument, defense counsel argued that Frederick suffered from mental illness, specifically depression and paranoia, which affected his ability to form malice. Tr. 14/17-20, 40-43. She argued that Paige voluntarily remained at the Perry residence because of his outstanding warrants and was not kidnapped. Tr.14/26, 45. She argued that although Frederick participated in some beatings, the worst injuries to Paige were not inflicted by Frederick, but by Clinton and others. Tr. 14/32-38. She argued that there was no evidence of any specific intent to kill or that Frederick was part of a joint venture to kill. Tr. 14/33, 36. She argued that there was no evidence, medical or otherwise, linking Frederick's actions to Paige's death. Tr. 14/34.

The prosecutor argued that          Frederick was "running the household," emphasizing the statement of Lena Perry: "I'm not in charge of you, Fred is." Tr. 14/51, 56.

## THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
## THE DEFENDANT'S MURDER CONVICTION.

**A.  The Evidence Presented at Trial Was Utterly Insufficient to Prove That the Defendant Committed Murder Under the Thgeory of Individual Liability.**

**1.  Insufficiency of evidence, generally.**

Convicting a defendant of a crime upon insufficient evidence violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and. The critical inquiry under federal law, as it is under Massachusetts state law, is whether in the light most favorable to the prosecution, a rational jury could have found every essential element of the crime charged beyond a reasonable doubt. Francis v. Franklin, 471 U.S. 307, 313 (1985);

Although a jury is entitled to draw reasonable inferences from circumstantial evidence, reasonable inferences themselves must be more than speculation and conjecture. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943). Proof of the opportunity to commit the crime or presence at the scene of the crime, without more, is insufficient to convict. United States v. Luciano-Mosquera, 63 F.3d 1142, 1150 (1st Cir. 1995). See also, United States v. dela Cruz-Paulino, 61 F.3d 986 (1st Cir. 1995). Moreover, when the evidence tends equally to sustain either of two inconsistent propositions, niether of them can be said to have been established by legitimate proof. Salemme, 395 Mass. at 601 (evidence insufficient to prove that defendant killed the victim

- 15 -

when both defendant and another person had equal opportunity to kill the victim);

### 2. Appellate review of sufficiency of the evidence.

Where multiple theories of criminal culpability are submitted to the jury, the Commonwealth must have presented sufficient evidence at trial to prove each element of each theory beyond a reasonable doubt. Zant v. Stephens, 462 U.S. 862, 880-81, 103 S.Ct. 2733 2744-45, 77 L.Ed.2d 235.   United Styates v. Gaudin, 515 U.S. 506, 522-23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (The United States Supreme Court has clearly held that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged").

A defendant's filing of a generalized motion for re-quired finding at the close of the Commonwealth's case ade-quately preserves for appellate review the sufficiency of the evidence on each theory of culpability submitted to the jury. If the jury may have relied upon a theory of culpability inadequately supported by the evidence, the defendant is entitled to a new trial. See Zant v. Stephens, 462 U.S. 862.

### 3. The requirement of proximate cause.

In order to justify a murder conviction, the Common-wealth must present evidence, inter alia, that the defendant's acts proximately caused the victim's death.

- 16. -

It is not enough to prove that a defendant's conduct constituted a link, no matter how remote, in the chain of events leading to death. Commonwealth v. Rhoades, 379 Mass. 810, 824-25 (1980). Rather, proximate cause is proven only if "in the natural and continuous sequence, [the defendant's conduct] produces the death, and without which the death would not have occurred." Commonwealth v. Santiago, 425 Mass. 491, 503-04 (1997).

Ascertaining whether the prosecution presented sufficient evidence of proximate cause is necessarily a fact-bound undertaking. The fact-bound determination of proximate causation becomes even more complicated when there is more than one possible cause of death.

However, where an intervening act of a third party prevents the victim's death from flowing naturally and continuously from the defendant's conduct, the defendant cannot be held criminally liable. McLeod, 394 Mass. at 747.

In this case, the Commonwealth requested and the trial judge agreed to submit the case to the jury on multiple theories, including individual liability. Tr. 14/110-116. In returning its verdict, the jury did not specify whether the defendant/petitioner was guilty as a principal or as a joint venturer. (R. 104) At the close of the Commonwealth's case, the defendant filed a motion for a required finding of not guilty, which was denied. Accordingly, if there was insufficient evidence to support the submission of the in-

- 17 -

dividual liability theory to the jury, the defendant is
entitled to the reversal of his conviction. See Zant v.
Stephens, 462 U.S. 862, 880-81;

A careful assessment of the evidence presented by the
Commonwealth at trial demonstrates that there was absolutely
no basis to convict the petitioner under a theory of indivi-
dual liability. The medical examiner testified that the cause
of death was "multiple metachronous blunt and sharp force
injuries to the head, torso, and extremities," 7/114-115,
and that death was a result of "the sum total of the injuries
that we've seen today." 7/207. While it might fairly be
inferred that Frederick's individual blows caused some injury
or bruising at some point, it would be entirely speculative
to conclude that the specific acts attributed to Frederick
individually in December 1994 and January 1995 match any of
the specific injuries found on Paige's body when it was
examined by the medical examiner in May 1995, let alone
caused Paige's death.

Significantly, there was no evidence presented by the
Commonwealth that Frederick was individually responsible for
either of the two injuries which Dr. Kaplan described as
possibly being fatal in and of themselves

Nor was there any evidence that Frederick was
individually responsible for Paige's jaw injury and resulting
inability to eat. (Tr. 7/111-112). Paige's weight loss may
well have occurred prior to his jaw injury. Michelle King
testified when she saw Paige in December 1994, he had lost

- 18 -

20-40 pounds, and she observed him staring into space, appearing to be withdrawn, sad, and uninterested in eating. (Tr. 5/185-189). Laura White, who allegedly visited regularly, testified that it was not until February 1995, that she observed that Paige's jaw was off-center. (Tr. 5/273-277). By contrast, many of the serious injuries found on Paige's body were specifically attributed to other perpetrators. For instance, the Commonwealth presented undisputed evidence that the numerous injuries to Paige's fingers were caused by Clinton Maynard hitting Paige's hands with a hammer when Frederick was not at home. (Tr. 8/110). Clinton also struck Paige with a hacksaw, a dumbbell bar, and a wooden club. (Tr. 8/59, 111, 115). Clinton was the last person to strike Paige. (Tr. 8/113). In sum, there is no evidence that any blow inflicted by Frederick proximately caused Paige's death. Any finding to the contrary would necessarily be based on impermissible, rank speculation.

In _Flynn_, the court reversed a defendant's manslaughter conviction on the grounds that the evidence at trial did not warrant submission of the case to the jury on a theory of individual liability, holding that the Commonwealth's evidence was insufficient to establish that the defendant individually caused or contributed to cause the victim's death. 420 Mass. at 818. The victim's death in _Flynn_ was due to multiple blunt force injuries to the face and head. _Id._ at 815. The evidence, viewed in the light most favorable to the Commonwealth, established that a co-defendant repeatedly

- 19 -

struck the victim in the head and face, while the defendant kicked the victim in the chest and, at most, gave the victim "a couple of shots" to the face with an indeterminate amount of force. The Court found that given the evidence of the subsequent beating by a co-defendant, the inference that the co-defendant's blows alone caused the death was at least as strong as any inference that the defendant's "shots" caused or contributed to cause the death. Id. at 818 "Thus, a reasonable juror...could not overcome a reasonable doubt about whether the defendant's own acts caused death." Id.

The proper outcome of the petitioner's appeal is controlled by the decision of the Court in Flynn. Here, as there, the victim died as a result of beatings perpetrated by more than one person. Here, as there, the inference that other's blows alone caused death was at least as strong as any inference that the defendant's blows either caused or contributed to the death. Here, as there, a reasonable juror could not overcome a reasonable doubt whether the defendant's own acts proximately caused the death. Here, as there, the theory of individual liability was erroneously submitted to the jury. Here, as there, the jury did not specify whether its verdict was based on individual liability or joint venture, thus the jury may have relied upon an erroneous theory in returning its verdict.

**B.   The Evidence Presented at Trial Was Utterly Insufficient to Prove That the Defendant Committed Murder under a Theory of Joint Venture.**

The theory underlying joint enterprise is that "one who

- 20 -

aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal." <u>United States v. Shifman</u>, 124 F.3d 31,37 1[st]Cir. 1997).

In order to convict a defendant under the theory of joint venture, the prosecution must present evidence that the defendant was: "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." <u>Commonwealth v. Lynch</u>, 428 Mass. 617, 620 (1999)   In addition, the prosecution must show that the defendant shared with the principal the mental state required for the crime. <u>United States v. Taylor</u>, 54 F.3d 967, 975 (1st Cir. 1995);

there is no evidence that Frederick participated as a joint venturer in beatings of Paige which proximately caused Paige's death. The Commonwealth's evidence was sufficient, at most, to establish Frederick's participation with others in various beatings of Paige from December 1994 to February 1995, none of which can be matched to any specific injuries on the body when it was discovered in May 1995. For example, Paige's penis was allegedly burned, yet there was no injury to the genitalia found. (Tr. 7/154). There was evidence presented that Clinton Maynard beat Paige outside of Frederick's presence (Tr. 6/59, 8/110, 113) and that, on various occasions, Frederick left the residence while Paige stayed at home with Roger, Richard, and Clinton. (Tr. 10/113-119). It

- 21 -

would be sheer speculation to infer that the beatings in which Frederick arguably participated as a joint venturer were the beatings which caused the injuries that caused death, as opposed to other beatings by third parties in which Frederick was not involved. Salemme, 395 Mass. at 601

This is not a case in which it can clearly be determined that two or more persons engaged in a beating which caused the death,    Rather, in this case, it cannot be determined which of numerous alleged beatings, involving various combinations of assailants, proximately caused a death which occurred two months later and may well have been due to pneumonia. The chain of inference is stretched beyond the breaking point in this case. In sum, the evidence is insufficient to prove that "in the natural and continuous sequence," Frederick's acts, even as a joint venturer, "produce[d] the death, and without which death would not have occurred." Rhoades, 379 Mass. at 825.

Moreover, there was insufficient evidence that Frederick's state of mind met the requirements necessary to convict him of murder under a joint venture theory. Frederick's mere presence in the house during beatings by third parties and his failure to prevent such beatings does not constitute proof of joint venture as to those beatings. Indeed, Frederick testified that although he sometimes participated in beating Paige, at other times he attempted to stop the beatings. (Tr. 12/90-92).                    Even if Frederick arguably was a joint venturer with respect to

- 22 -

certain beatings of Paige, that evidence is insufficient to prove that he shared the mental state of malice aforethought necessary for murder (described below), as opposed to a lesser charge of assault and battery or, if proximate cause had been sufficiently proved (which it was not), involuntary manslaughter. The Commonwealth's evidence of consciousness of guilt, based on the defendant's participation in disposing of the body, is not sufficient to establish the defendant's culpability for the crime of murder. Commonwealth v. Toney, 385 Mass. 575 (1982).

### C.   The Evidence Presented at Trial Was Utterly Insufficient to Prove Malice.

The crime of murder requires proff of an unlawful killing committed with malice aforethought. Malice may be proved by evidence establishing one of three theories or "prongs" of malice, as set forth in Commonwealth v. Grey, 399 Mass. 469, 470 n. 1 (1987) and its progeny. The evidence at trial was clearly insufficient to prove that the defendant acted with malice. The prosecution's evidence was sufficient at most, to demonstrate that the defendant participated, either individually or as a joint venturer, in various beatings of Paige at various times. Not only did these beatings not cause immediate death, but death did not occur until months later, and the evidence strongly suggested that Paige ultimately died of pneumonia. It cannot be seriosly contended that these facts are sufficient to prove "first-prong" malice, requiring intent to kill. See Commonwealth v. Plunkett, 422 Mass. 634, 636 (1996)

- 23 -

The evidence is also insufficient to prove "second-prong" malice. None of the acts attributable to the defendant either individually or as a joint venturer, were sufficient to demonstrate intent to cause "grievous bodily injury," rather than mere bodily injury. As the Supreme Judicial Court of Massachusetts stated in Commonwealth v. Sneed: See R.A. #1 413 Mass. 387, 392 (1992)(evidence of massive blunt trauma to child's head did not necessarily prove second-prong malice). There was no evidence that any of the beatings attributable to the defendant caused severe injury to Paige, or that Frederick intended anything more than mere injury by his acts.

Finally, the evidence was insufficient to prove "third-prong" malice. Where the death did not occur until months after Frederick's acts and may well have been ultimately due to pneumonia, there is no indication that a reasonably prudent person would have known that there was aplain and strong likelihood of death stemming from the various beatings of the victim. It is recognized that "[a] simple blow with the hand administered to a healthy adult" creates no plain and strong likelihood that death will follow. Commonwealth v. Mahnke, 368 Mass. 662, 702-703 (1975), cert. denied 425 U.S. 959 (1976). Even severe batteries leading to death within hours or days do not necessarily create an inference of third-prong malice. See Commonwealth v. Williams, 428 Mass. 383, 386-389 Commonwealth v. Vizcarrondo, 427 Mass. 392, 397

- 24 -

(1998)

In sum, the evidence of malice in this case was insufficient to prove that the defendant committed murder. The defendant's motion for required finding as to murder should have been allowed.

### THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE DEFENDANT'S CONVICTION OF KIDNAPPING.

The crime of kidnapping is defined, in relevant part, as: "without lawful authority, forcibly or secretly confin[ing] or imprison[ing] another person...against his will." M.G.L. c. 265, §26. Confinement that is integral to another crime and does not exceed the restraint incident to that crime, does not constitute kidnapping. See Commonwealth v. Kickery, 31 Mass. App. Ct. 720, 723-724 (1991) Mere verbal commands without the use or display of force do not constitute kidnapping. Commonwealth v. Banfill, 413 Mass. 1002, 1003 (1992)

The Commonwealth's amended bill of particulars specified that from "December 23, 1994 to April 9, 1995...the defendant, acting individually and as a joint venturer with the co-defendants, did forcibly confine Bill Paige to 217 Chapman Street in Greenfield against his will." (R. 102-103). As with the murder charge, the trial judge instructed the jury that the Commonwealth could prove the kidnapping charge either under the theory of individual liability or the theory of joint venture. (Tr. 14/110-116). In returning its verdict, the jury did not specify which theory it chose. (R. 105).

The evidence was utterly insufficient to prove that any

- 25 -

kidnapping occurred under either theory. By all accounts,
Paige voluntarily commenced living at the Perry home. There
was no indication of any force or threat by anyone when Paige
told his brother that he was going to live with Frederick.
(Tr. 3/61-63, 79). Moreover, there is no evidence that Paige's
continued residence at the Perry home was involuntary.
Evidence that Paige was beaten at the Perry home does not
prove that he was forced to live there. Paige specifically
explained that he needed to stay out of sight due to out-
standing warrants against him, and specifically declined an
offer to move to another residence, saying he wanted to
remain where he was (Tr. 3/64, 80, 5/194-200). Evidence that
Frederick bossed Paige around inside the home does not
constitute evidence of kidnapping. See Banfill, 413 Mass. at
1003                          The same can be said of
the other instances of alleged restraint by others, such as
the allegation that Clinton tied Paige while beating him.
(Tr. 8/59, 115).

Alternatively, even if various instances of alleged
restraint by others could constitute a kidnapping, none of
these incidents is fairly attributable to Frederick on an
individual liability theory. The Commonwealth's only other
evidence relevant to the kidnapping charge was that Clinton
allegedly tied Paige to a weight bench during beatings
Clinton told Paige he would die if he "was let out." (Tr.
8/58). Even if such evidence were sufficient to support a
guilty verdict on a theory of joint venture, it was plainly

- 26 -
-

insufficient to support a finding of individual liability by this defendant. Because the jury may have relied upon a theory of individual culpability for which there was no evidentiary support, the defendant is entitled, at the very least, to a new trial as to kidnapping on the theory of joint venture only. See Zant v. Stephens, 462 U.S. 862.

### THE TRIAL JUDGE IMPROPERLY EXCLUDED EXPERT TESTIMONY REGARDING MENTAL IMPAIRMENT OF A KEY PROSECUTION WITNESS.

The Confrontation Clause of the Sixth Amendment to the United States Constitution    protect an accused's right to confront the witnesses against him. Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987); Davis v. Alaska, 415 U.S. 315, 316 (1974). A defendant is entitled to impeach a witness res-pecting the witness's ability to accurately perceive, remem-ber, and articulate. United States v. Butt, 955 F.2d 77, 82 (1st Cir. 1992).

The Compulsory Clause of the Sixth Amendment to the United States Constitution    guarantee a criminal defendant the right to present a defense, including the right to present witnesses. Washington v. Texas, 388 U.S. 14, 18-19 (1967). Unjustifiable exclusion of expert testimony violates the right to present a meaningful defense.

It is well established that a witness's mental state is relevant to the issue of credibility. United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991). Thus, a defendant is entitled to impeach a witness during cross-examination regarding mental impairment, including intoxication or drug

- 27 -

addiction, if the impairment may affect his ability to per-
ceive, remember, and articulate accurately. Unjustifiable
restriction of cross-examination and/or defense access to
information pertaining to the psychiatric history of a pros-
ecution witness violates the defendant's constitutional right
to confrontation. See, United States v. Lindstrom, 698 F.2d
1154, 1159 (11th Cir. 1983) (reversing conviction).

Expert psychiatric testimony respecting a witness's
mental impairment has been held admissible in numerous federal
cases. See, United States v. Partin, 493 F.2d 750, 764 (5th
Cir. 1974)                                    In United
States v. Gonzalez-Maldonado, 115 F.3d 9, 15-17 (1st Cir.
1997) the First Circuit reversed a defendant's conviction
due to the court's erroneous exclusion of psychiatric
expert testimony regarding a witness's mental illness, noting
that the proffered expert testimony concerned "scientific,
technical or specialized knowledge," and that the testimony
would have assisted the jury in deciding what weight to give
the witness's statements. See, Boyd, supra at 1277. In cases
where a witness's memory or mental capacity is legitimately
at issue, a...court may admit evidence of a witness's drug
use as it relates to his or her "inability to recollect or
relate." United States v. Robinson, 956 F.2d 1388, 1397 (7th
Cir), cert. denied,___U.S.___, 113 S.Ct. 654, 121 L.Ed.2d
581 (1992); See also Wilson v. United States, 232 U.S. 563,
568, 34 S.Ct. 347, 349, 58 L.Ed. 728 (1914).

- 28 -

The trial judge's decision to exclude the defendant's proffered expert testimony on the effects of long-term marijuana and heroin abuse on a key prosecution witness constitutted reversible error    , it is apparent that the judge's decision to exclude the expert testimony was based on an erroneous finding as to the extent of the prosecution witness's testimony. In ruling that the expert witness testimony would not be allowed as to cannabis disorder and heroin use, the trial judge stated: "I would not permit [that], because that goes beyond, I think, what's been testified to." Tr. 10/84. However, Laura White did testify on both cross and redirect examination to her long-term marijuana and heroin abuse. Tr. 9/14-15, 19-25, 41, 46. Thus,      the testimony was excluded erroneously.

In this case      Dr. Bursztajn's proffered testimony would clearly have been of assistance to the jury in weighing the testimony of Laura White. Defense counsel's offer of proof was that Dr. Bursztajn would testify as to the symptoms of prolonged marijuana and heroin abuse, "including the inability to remember, to recall, to perceive, and also... the ability to confabulate and create." Tr. 10/87.

If Dr. Bursztajn had been allowed to testify about the effects of long-term drug use on a person's memory and perception, the jury may well have discounted White's testimony, which was critical to the prosecution's case. She alone claimed to have made personal observations

- 29 -

as late as Valentine's Day in 1995; thus her observations were closest in time to the victim's death. Tr.5/271. It would be interesting to note that White also allegedly observed the victim with a broken arm which the medical examiner said there was no evidence of. Tr. 7/     .

Even if the harmless error analysis did not apply, the error here satisfies the more stringent prejudicial error standard, because one cannot say with fair assurance... that the judgement was not substantially swayed by the error.

### THE IMPROPER ADMISSION OF INADMISSIBLE HEARSAY DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

The improper admission of hearsay in a criminal case implicates a defendant's right to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution  See, <u>White v. Illinois</u>, 503 U.S. 346, 352-354 (1992); <u>Idaho v. Wright</u>, 497 U.S. 805, 813-817 (1990). Violation of the right to confrontation is subject to harmless error review. <u>Van Ardell</u>, 475 U.S. at 674.

Under         28 U.S.C.A., the existence of the joint venture must be proved by means other than the extrajudicial statement in question in order for the statement to be admissible. <u>Bourjaily v. United States</u>, 483 U.S. 171, 173, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144.

The out-of-court statement of Lena Perry that "she wasn't in charge of [Paige]... Freddy was," constituted inadmissible hearsay. The satement was made out of court

and offered to prove the truth of the matter asserted. There was no evidence that Lena was a joint venturer in beating, murdering, or kidnapping Paige. Although Lena Perry lived in the same home where the events in question allegedly occurred, her mere presence was not sufficient to demonstrate joint venture. The Commonwealth presented no evidence tending to show that Lena shared any culpable mental state with the defendant or other alleged co-ventureers. Indeed, the evidence was to the contrary; the Commonwealth presented evidence that the defendant threatened his mother that he would "put a knife through [Paige]" if she left the house, and that he hid the fact of Paige's death from her, telling her that Paige went to the hospital. The evidence that Lena told police that Frederick and Paige were in Arizona in order to assist them in evading arrest on unrelated charges had nothing whatever to do with her mental state with respect to harming Paige.

The defendant timely objected to the admission of Lena's statement. Tr. 5/240, 9/47-50.  Even under the prejudicial error standard, one cannot say with fair assurance... that the judgement was not substantially swayed by the error. The evidence of kidnapping, which was insufficient even including Lena's statement, was even more deficient without that statement. the evidence also erroneously buttressed the murder charge, as it related to Frederick's intent. The prosecutor further emphasised Lena's statement during closing argument, using it to characterize Frederick as "running the house-

hold." Tr. 14/51, 56. See <u>Commonwealth v. DiRenzo</u>, 44 Mass.
App. Ct. 95, 99, rev. denied 427 Mass. 1103 (1998) (error
compounded by prosecutor's adoption of it in closing argu-
ment).

### THE ERRONEOUS ADMISSION OF THE DEFENDANT'S CUSTODIAL STATEMENTS DEPRIVED HIM OF A FAIR TRIAL.

### The Defendant's Statements Were Involuntary and Were Obtained in Violation of Due Process.

The Due Process Clause of the Fifth and Fourteenth
Amendments to the Constitution of the United States
are violated when a conviction is based in whole or in part
upon an involuntary confession. <u>Jackson v. Denno</u>, 378 U.S.
368, 376 (1964). A statement by someone who, by dint of
mental or physical impairment, is incapable of withholding
information cannot be used as evidence. <u>Pea v. United States</u>,
397 F.2d 627, 634 (D.C. Cir. 1967).

The admission of a coerced confession is subject
to harmless error review. <u>Arizona v. Fulminate</u>, 499 U.S. 279,
295 (1991).

The Commonwealth failed to sustain it's heavy burden of
demonstrating that the defendant's statements to the state
police were voluntary. In Dr. Bursztajn's expert opinion, at
the time of the interrogation, Frederick suffered from a
long-standing major mental illness of severe paranoia and
depression, and his statements were obtained as a direct
result of that illness. Hg. 2/22, 26-27, 32-34. Judge
Welch's finding that the defendant's statements were "the
product of a rational intellect and were given freely" was

- 32 -

clearly erroneous. The statements should have been suppressed. Because the evidence at trial was far from overwhelming, the failure to suppress the statements cannot be deemed harmless beyond a reasonable doubt.

### The Defendant's Statements Were Obtained in Violation of His Miranda Rights.

In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Supreme Court held that statements made in response to cus-todial interrogation are presumed to be "compelled" unless the defendant receives notice of the privilege against self-incrimination and the right to counsel. When a defendant unrepresented by counsel makes statements to the police during an interrogation, the prosecution must prove beyond a reason able doubt that the defendant made a knowing, intelligent, and voluntary waiver of Miranda rights. Edwards v. Arizona, 451 U.S. 477, 482 (1981). If an individual in custody "states that he wants an attorney, the interrogation must cease until an attorney is present." Miranda, 384 U.S. at 474. See, Edwards, 451 U.S. at 474, 484-485; Minnick v. Mississippi, 498 U.S. 146, 149 (1990). Admission of statements obtained in violation of Miranda is subject to harmless error analysis. Bryant v. Vose, 785 F.2d 364, 368 (1st Cir.), cert. denied, 477 U.S. 907 (1986).

Frederick's clear and unequivocal assertion of his right to an attorney was not honored by the police. Hg. 1/176, 181, 184, 211, 217, 219, 225. There was no break in custody, and the interrogation that followed was initiated by the troopers not by Frederick. Id. Despite having signed a waiver, the

- 33 -

failure to honor the defendant's rights requires that the statements, both oral and written, be suppressed. See, Commonwealth v. Judge, 420 Mass. 433, 448 (1995). Judge Welch's finding that the defendant's statements were knowingly, intelligently, and voluntarily given to the police after a valid waiver of his Miranda rights was clearly erroneous. The motion to suppress should have been granted. Since the admission of the statements cannot be deemed harmless.

### VIOLATION OF THE DEFENDANT'S RIGHT TO BE PRESENT AT SIDEBAR DURING INDIVIDUAL JUROR VOIR DIRE DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

A criminal defendant has the right to be personally present at all critical stages of the proceedings under the Sixth and Fourteenth Amendments to the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights. Kentucky v. Stincer, 482 U.S. 730 (1987). This right extends to jury selection. Lewis v. United States, 146 U.S. 370, 373-376 (1892); accord Gomez v. United States, 490 U.S. 858, 873 (1989). It is well established that a defendant is entitled to be physically present at sidebar during individual voir dire.

Under the Sixth and Fourteenth Amendments the right to presence is so fundamental that its violation warrants a per se finding of prejudice. Commonwealth v. Owens, 414 Mass. at 603 n. 3; Kentucky v. Stincer, 482 U.S. 730.

Where the defendant is in

- 34 -

custody, " 'the serious and weighty responsibility' of
determining whether he wants to waive a constitutional right
requires that he be brought before the court, advised of that
right and then permitted to make 'an intelligent and
competent waiver.' " United States v. Gordon, 829 F.2d 119,
125

Where defense counsel did not consult with the defen-
dant concerning the waiver and did not obtain defendant's
consent, the waiver will not be binding on the defendant.
See United States v. Crutcher, 405 F.2d 239, 243 (2d Cir.
1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.
2d 219 (1969).

A defendant may waive his right to be present, see
United States v. Neff, 10 F.3d 1321, 1324 (7th Cir. 1993),
but a purported waiver by counsel is not adequate to effect
a waiver. United States v. Billingsly, 766 F.2d 1015, 1020
(7th Cir. 1985)

Accordingly, waiver of the right to be
present at sidebar should be expressly made by a defendant
personally. In Commonwealth v. White, 37 Mass. App. Ct. 757,
760 (1994), the Appeals Court reversed a conviction where a
defendant was excluded from the courtroom during voir dire,
holding that a valid waiver of defendant's right of presence
required him to expressly waive his presence in open court,
and expressing doubt over whether defense counsel could waive
defendant's presence even if counsel had so intended. White,
Larson v. Tansy, 911 F.2d 392, 396 (10th Cir. 1990).

- 35 -

Here, the trial judge asked **defense counsel** whether the
defendant (petitioner) wished to be present at sidebar, and
counsel expressed **her** preference that he not be present,
stating "for this I would rather have him sit back there."
Tr. 1/25. By relying solely on defense counsel instead of
addressing the defendant directly, the court undermined the
primary safeguard for ensuring that the defendant was aware
of his right and given the opportunity to invoke that right.
Requiring a personal waiver eliminates any question over
whether defense counsel has acted without the consent or in-
put of the defendant. As the court remarked in Gordon, "we
find an on-the-record-waiver [from the defendant] desirable
because it is difficult, if not impossible, to determine
whether the defendant has knowingly and intelligently
relinquished a known right." 829 F.2d at 126.

As the Court noted in
Robichaud: "It is frequently to the defendant's advantage to
communicate orally with his counsel in the course of a
witness's testimony since he may have information which may
aid his counsel...We think that [the defendant's] presence at
the voir dire might have been of value to him and his counsel."
See also United States v. Alessandrello, 637 F.2d 131, 151
(3d Cir. 1980) (Higginbotham, J., dissenting) (defendant "has
unique knowledge [relevant to juror voir dire]...which may
become important as the individual prejudices or inclinations
of the jurors are revealed"). Without being present at side-
bar, the petitioner was deprived of the opportunity to hear
the individual juror responses, to scrutinize the jurors'

- 36 -

facial expressions, and to communicate with his counsel
during questioning, thereby preventing him from meaningful
participation in the jury selection process.

### THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES .

The United States Supreme Court has articulated a two-
prong test to be applied to claims of ineffective assistance
of counsel, Strickland v. Washington, 466 U.S. 668, 104 S.Ct.
2052 (1984), ie. 1) Counsel's representation fell below an
objective standard of reasonable; and 2) that counsel's error
prejudiced the defense. Id, at 2064-2068. Such that there is
a reasonable probability that but for counsel's error the
result of the proceeding would have been different. Id, at
2068. See also, Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct.
2574, 2583 (1986).

The same standard applies in assessing ineffective
assistance of counsel claims for both trial and appellate
counsel. Commonwealth v. Sowell, 34 Mass. App. Ct. 229, 231
(1993). There the Court stated that "[F]ederal Courts in
addressing the issue of appellate counsel's effectiveness
under the Strickland standard, have focused upon whether
appellate counsel 'failed to raise a significant and obvious
issue...which...may have resulted in reversal of the convic-
tion or an order for a new trial...' Id. at 232, quoting
Gray v. Greer, 800 F.2d 644,646 (1986). The assessment
encompasses a comparison of the issues which were raised,

- 37 -

with the issues which were not. In general, when ignored issues are clearly stronger than those which were presented, the presumption of effective assistance is over-come. Gray v Greer, supra at 646.

In this case defense counsel was made aware of an individual who had specific information concerning this criminal matter. Counsel was informed that 1) this individual was willing to testify; 2) was awaiting trial on an unrelated matter; and 3) was in no way going to benefit from his testimony. Defense counsel sent private investigators to interview this individual and were subsequently informed that he did in fact have relevant and pertinent information which would have refuted the Commonwealth's theory and would have provided a substantial chance that the jury would have reached a different verdict. His testimony would have refuted the testimony of Laura White a chief prosecution witness, who testified on direct-examination that she saw the victim tied to a chair with numerous bruises and what appeared to be a broken arm. (Tr.          ). Had trial counsel called the above-mentioned individual to testify, he would have stated that 1) he knew Paige because Paige dated his daughter in the past; 2) he saw Paige at a convenience store/gas station on Main Street in Greenfield during the first weeks of February 1995; 3) that Paige was alone; and 4) that Paige had no visible bruises or broken bones. This evidence was relevant to impeach the credibility of Laura White. Had it been

- 38 -

put before the trier of fact the result of the trial would have been different.

The defendant's mother, also a co-defendant in this case, was willing to testify; may not have benefited from her testimony, would have testified that Laura White had not been at her home at 217 Chapman Street in Greenfield after New Years Eve 1994; that Ms. White was mad because she was not allowed in the Perry home with or while under the influence of drugs; that Ms. White was mad at Frederick for removing her car from the Perry residence driveway; that Mrs. Perry was in fact the head of her household; that she as well as her family were scared of Clinton Maynard; and that Clinton had made verbal threats to harm Frederick's children if Frederick did not assume most of the blame for this crime if the authorities ever found the body.

In this case, David Tetrault (hereinafter Tetrault), who was the lead private investigator hired by defense counsel, informed the defendant that he had in his possession a statement from a prosecution witness, in which the witness stated that she had lied to the District Attorney. Had Tetrault testified, this statement would have been admitted into evidence, which would have called into question the credibility of the prosecution witness. Tetrault would also have been able to testify that he talked to the individual who said he had seen Paige at the Convenience store in early February. Tetrault was not called because trial counsel was

aware of unreasonable tactics used by Tetrault in his investigation.

Counsel is ethically liable for the activities of the investigator. In addition to potential criminal liability, it is unprofessional conduct for counsel knowingly to use illegal investigation or to employ, instruct or encourage others to do so. S.J.C. Rule 3:08, DF 8.

Here the case was not overwhelming and trial counsel held, but never played, the highest cards. Frederick was deprived..."of an otherwise available, substantial ground of defense," Saferian, 366 Mass. at 96, in that he was stripped of the supportive testimony of not merely one witness but many, one of which was the very best sort of witness---a neutral eyewitness with an excellent opportunity to observe and no apparent bias or motive to patter or mislead.

In order to fulfill a defendant's Sixth and Fourteenth Amendments right to counsel, attorneys must vigorously advocate the defendant's cause, consult with the defendant and keep the defendant informed of important developements in his case. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2065 (1984); Johnson v. Singletary, 883 F.Supp. 1535, 1545.

**THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN DEFENDANT WAS COMPELLED TO TESTIFY BY COUNSEL IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.**

The United States Supreme Court in, Harris v. New York,

- 40 -

401 U.S. 222 (1971), stated in the course of its opinion

"Every criminal defendant is privileged to testify in his own

defense, or refuse to do so. Id. 401 U.S. at 225. See R.A. #2

    In Coppola v. Powell, 878 F.2d 1562 (1st Cir. 1989) the

Court stated the three basic legal principles that have

animated the application of the Fifth Amendment privilege

against self-incrimination. The first principle is that the

invocation of the right must be given liberal construction.

                            "This Constitutional

protection must not be interpreted in a hostile or niggardly

spirit." Ullman v. United States, 350 U.S. 422, 426 (1956).

"Even the most feeble attempt to claim a Fifth Amendment

privilege must be recognized..." United States v. Goodwin,

470 F.2d 893, 902 (5th Cir. 1972), cert. denied, 411 U.S.

969, (1973)

     "It is agreed by all that a claim of the [Fifth

Amendment] privilege against self-incrimination does not

reuire any special combination of words." Quinn v. United

States, 349 U.S. 155, 162 (1955).

    It is also recognized that the accused has the ultimate

authority to make certain fundamental decisions regarding the

case, as to whether to plead guilty, waive a jury, testify in

his or her own behalf... see Wainwright v. Sykes, 433 U.S.

72, 91 n. 1 (1977)(Burger, C.J., concurring); ABA standards

for Criminal Justice 4-5.2, 21-2.2 (2d ed. 1980).

    The defendant/petitioner in this case asserts that he

was compelled to testify in his own defense, by trial counsel.

On March 18, 1997, during a brief recess, trial counsel, in

the company of a Board Certified Forensic Psychiatrist, Dr.
Harold Bursztajn, told the defendant that he <u>had</u> to testify.
The defendant immediately told counsel that he did not want
to testify because if I did I would have to lie to protect my
children. Trial counsel continued to insist that I <u>had</u> to
testify. After numerous refusals to do so, trial counsel
recruited Dr. Bursztajn who had previously testified that the
defendant suffered from a long-standing mental illness, as
well as defendant's feelings of being helpless, hopeless, and
worthless and that as such would be more open to engaging in
behavior which is not voluntary. Dr. Bursztajn stated, "In
the circumstances of the defendant, his 'behavior is based on
the belief that even though what one is doing isn't in one's
interest, one has to do it, one feels that one has no choice
about it.' " Armed with this information, Dr. Bursztajn
immediately insisted that I <u>must</u> testify. This defendant
continued to state that he did not want to testify. After
numerous insistencies by both trial counsel and Dr. Bursztajn
that I <u>had</u> to testify and defendant's insisting that he did
not want to, trial counsel said she would be calling him to
testify whether he wanted to or not.

Trial counsel violated the defendant's rights to due
process, equal protection, and the right not to be compelled
to be a witness against himself under the Fifth, Sixth, and
Fourteenth Amendments to the United States Constitution.

- 42 -

**THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN COUNSEL FAILED TO REQUEST A SPECIFIC UNANIMITY INSTRUCTION IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.**

As the Court of Appeals for the Ninth Circuit noted in United States v. Echeverry, 719 F.2d 974, 975 (9th Cir. 1983), "when it appears...that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice. To correct any potential confusion in such a case, the trial judge must augment the general instruction to ensure the jury understands its duty to  unanimously agree to a particular set of facts." Accord, United States v. Payseno, 782 F.2d 832, 837 (9th Cir. 1986);

The Court has stated, in a case in which the indictment alleges a criminal offense occurring during a period of several months and, at trial, there is evidence that the defendant may have committed several such offenses within that period, describing them and the circumstances in which they occurred seperately and in some detail, a specific unanimity instruction informs the jury that, for a conviction the jury "must be unanimous as to which specific act[s] constitutes the offense charged." See Andres v. United States 333 U.S. 740, 748 (1948); Johnson v. Louisiana, 406 U.S. 356, 369 (1972);

The defendant in this case claims that trial counsel was ineffective for failing to request a specific unanimity

- 43 -

instruction where the Commonwealth presented evidence that the defendant and other third parties, at different times and in different combinations struck and mistreated Paige over an extended period of time. The Commonwealth presented evidence that assaults did occur but, failed to show that the defendant was involved in or even present during any specific act. Nor did they present any specific dates in which the defendant might have been involved in any specific act or acts. Defense counsel presented evidence to show that Frederick was not presentduring some of, if any of the alleged incidents.

In light of all the evidence presented at trial, counsel had an obligation to her client to request a specific unanimity instruction. Without such an instruction, we are left with the distinct possibility that the jurors may have agreed that the defendant committed different acts without being unanimous to any specific act or acts.

### THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL WHEN APPEALLATE COUNSEL FAILED TO RAISE SIGNIFICAN AND OBVIOUS ISSUES.

The defendant's right to effective assistance of counsel as guaranteed by the Sixth Amendment, extends to the defendant's first appeal. Evitts v. Lucey, 469 U.S. 387 (1985); See Douglas v. California, 372 U.S. 353, 355-356 (1963); Gray v. Greer, 800 F.2d 644, 646 (1986).

The Appeals Court of Massachusetts has also stated that "where counsel has not raised a critical issue on appeal, the chief victim is likely to be the defendant himself.

- 44 -

Commonwealth v. Miranda, 22 Mass. App. Ct. 10, 22 (1986).

In this case, appellate counsel failed to raise any ineffective assistance of counsel claims on direct appeal, stating that ineffective assistance of counsel claims cannot be raised on direct appeal.

Appellate counsel should have raised ineffective assistance of trial counsel for failing to call pertinent witnesses, for compelling defendant to testify, for failing to request a specific unanimity instruction.

Appellate counsel was ineffective for failing to raise the denial of defendant's motion to suppress physical evidence an issue which he briefed in a draft of defendant's direct appeal but did not put in actual brief for the Court to rule upon.

### TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE DEFENDANT'S RIGHT TO A TELEPHONE CALL ISSUE DURING DEFENDANT'S MOTION TO SUPPRESS CUSTODIAL STATEMENT PROCEEDINGS.

The United States Court of Appeals for the Ninth Circuit stated that, "While the right to use a telephone may not per se rise to the level of a liberty interest protected by the procedural mandate of the Fourteenth Amendment, the right of an arrestee not to be held incommunicado involves a substantial liberty interest." Carlo v. City of Chino, 105 F.3d 493 (9th Cir. 1997). It is clear that once a liberty interest has been found, federal law rather than state law dictates how much process is due. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). The Supreme Court has "repeatedly held that state statutes may create liberty

- 45 -

interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." <u>Vitek v Jones</u>, 445 U.S. 480, 488 (1980).

In <u>Carlo v. City of Chino</u>, supra, the State of California grants arrestees the right to place three telephone calls, under section 851.5 of the California Penal Code which clearly established Carlo's right to place telephone calls under state law, supra at 105 F.3d 496. The Court held that the process provided by the California statute (requiring notice of the right to telephone calls and permitting denial of a requested immediate phone call only in the case of physical impossibility) is sufficient to satisfy Constitutional due process. The Court further stated that "the California statute creates such a liberty interest." supra at 105 F.3d 497.

In <u>Strandberg v. City of Helena</u>, 791 F.2d 744, 747 (9th Cir. 1986), and <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996), the Court acknowledged the existence of a First Amendment right to telephone access subject to reasonable security limitations.

The Fifth Amendment prohibits use by the prosecution in its case in chief from using compelled testimony. See <u>New York v. Quarles</u>, 467 U.S 649, 654 (1984); <u>Michigan v. Tucker</u>, 417 U.S. 433, 444 (1974).

If a suspects statements had been obtained by "techniques and methods offensive to due process," <u>Haynes v. Washington</u>, 373 U.S. 503, 515 (1963), or under circumstances in which the

- 46 -

suspect clearly had no opportunity to exercise "a free and unconstrained will," Id., at 514, the statements would not be admitted. See Oregon v. Elstad, 470 U.S. 298, 304.

Case law in Massachusetts clearly states that the remedy for any intentional deprivation of defendant's right to make a telephone call should result in suppression of any unfavorable evidence gained thereof. Commonwealth v. Johnson, 422 Mass. 420 (1996);

In this case, trial counsel filed a motion to suppress defendant's custodial statement. During these proceedings trial counsel raised Miranda issues as well as voluntariness issues. The prosecution called state police officers Hart and Nartowicz to give testimony. Testimony elicited by the prosecution from both officers was in part that the officers did not want Frederick using the telephone. Trooper Hart testified that Frederick was escorted to the bathroom on one occasion because they were afraid that Frederick was going to use the telephone. Officer Hart also testified that upon their departure from the Correctional facility, after interrogating Frederick, they asked they correctional officers to keep Frederick away from the telephones. (Hg. 1/161; Tr. 8/77, 83).

Trial counsel failed to pursue this issue at the suppression hearing, in a memorandum in support of the oral argument at that hearing. She did not pursue this issue at trial other than a brief statement by the police officers. The defendant was not allowed to comment on this issue while

- 47 -

testifying at the suppression hearing or at trial.

Here the defendant has shown that he had a liberty interest which entitled him to the procedural protections of the Due Process Clause of the Fourteenth Amendment. Any failure on the part of trial counsel to raise this issue at the suppression hearing and at trial was manifestly unreasonable, and that there was serious lack of competency, attention, and efficiency of trial counsel. Thereby depriving the defendant of an otherwise available, substantial ground of defense. <u>Strickland</u>, 466 U.S. at 104 S.Ct. 2052, 2064.

### THE MOTION JUDGE'S DENIAL OF THE DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

Admission into evidence of items obtained by a search and seizure in violation of a criminal defendant's Constitutional rights violates the Fourth Amendment to the United States Constitution. <u>Weeks v. United States</u>, 232 U.S. 383 (1914).                              The search warrant application must present a sworn statement in writing that sets forth sufficient facts to show "the items sought are related to the criminal activity under investigation, and that they may be reasonably expected to be located in the place to be searched. See <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 554-557 & n. 6 (1978).

The affidavit in support of a search warrant must establish probable cause to search for the items specified in the warrant. <u>United States v. Ventresca</u>, 380 U.S. 102,

108     Probable cause is "less than evidence which would justify...conviction" but "more than bare suspicion." See Brinegar v. United States, 338 U.S 160, 175 (1949). Probable cause depends on whether the item sought is sufficiently connected to specific criminal activity, and whether there is sufficient information available to conclude that the item will likely be in the place to be searched at the time the search will occur. Zurcher, 436 U.S. 547, 558, n. 6.

A search warrant is invalid if the underlying facts in the affidavit do not provide a nexus to the place targeted for search. See Commonwealth v. Kaufman, 381 Mass. 301, 304-305 (1980)(no probable cause due to absence of reliable information of illegal activity in the place to be searched); See also, Spinelli v. United States, 393 U.S. 410, 416 (1969);

Information merely establishing that a person committed a crime will not necessarily support an inference of probable cause to search his home. Zurcher, 436 U.S. 547, 558; United States v. Charest, 602 F.2d 1015 (1st Cir. 1979)(probable to believe suspect committed murder 18 days prior to warrant application did not support search of suspect's home for murder weapon).

A search warrant is also invalid if the information provided to the magistrate is not sufficiently fresh to ensure that probable cause still exists at the time the warrant is issued. The "proof must be of facts so closely related to the time of issue of the warrant as to justify a finding of probable cause at that time. Sgro v. United States,

- 49 -

287 U.S. 206, 210 (1932);                    Information

regarding easily removable objects tends to become stale more
quickly than durable or valuable objects. See, e.g., United
States v. Johnson, 461 F.2d 285, 287 (10th Cir.1972)

The search warrant in this case was issued without
probable cause to believe that the particular items to be
seized were located on the premises to be searched. There was
no probable cause to believe that any of the items listed in
the search warrant, with the exception of, the weights, and
scissors, and the kitchen knives, would be found at the
Orange residence three months after the death of Paige in
Greenfield. There was no allegation that Paige had ever been
at the Orange residence. With the exception of the scissors,
knives, and weights, the Commonwealth presented no information
that the items identified in the search warrant had been taken
to Orange. The mere fact that the Perry family had moved to
Orange does not support the inference that they took the
sought after items with them. Many of the items seized (and
later admitted at trial) had little or no value, for example,
frayed electrical cords. Indeed, the statement of the land-
lord of the Greenfield residence, set forth in the search
warrant affidavit, was that the Perry family had left behind
various unspecified "junk" which the landlord disposed of.
Furthermore, there was nothing in the application or affidavit
to indicate that the Perry family would carry blood or hair
of the deceased with them to their new residence, or that
such items would be kept by them three months after Paige's

- 50 -

death. In sum, the information presented in support of the
search warrant did not provide a sufficient nexus to the place
to be searched, nor was it sufficiently fresh to ensure that
probable cause still existed at the time the warrant was
issued.

The motion judge's denial of the defendant's motion to
suppress was erroneous.

The Commonwealth's evidence was not over-
whelming. The admission of these items supported the
Commonwealth's theory of the case and severely prejudiced
the defendant.

### THE PROSECUTION ERRED IN ASKING THE DEFENDANT TO COMMENT ON THE CREDIBILITY OF PRIOR COMMONWEALTH WITNESSES.

Because credibility questions are for the jury, it is
improper to ask one witness to comment on the veracity of
the testimony of another witness. See, United States v. Cole,
41 F3d 303, 308 (7th Cir. 1994); United States v. Sullivan,
85 F.3d 743, 749-750 (1st Cir. 1996);
Determinations of credibility are for the jury, Sartor v.
Arkansas Natural Gas Corp., 321 U.S. 620, 628 (1944), not

for witnesses, Greenberg v. United States, 280 F.2d 472, 475
(1st Cir. 1960).

Opinion testimony on the veracity of the testimony of
another witness is not admissible. United States v. Akitoye,
923 F.2d 221, 224 (1st Cir. 1991)("It is not the place of one
witness to draw conclusions about, or cast asperations upon
another witness' veracity").

In this case, the credibility of the Commonwealth's
witnesses and the defendant was a critical issue before the
jury. The jurors had to determine whether to accept the
version given by the Commonwealth or that given by the
defense. The questioning by the prosecutor was designed both
to discredit the defendant by pointing out inconsistencies
between his testimony and that of prior Commonwealth
witnesses and to try to make the defendant say that these
prior witness' were infact liars. The Court in Commonwealth
v. Tripplett, 398 Mass. 561    (1986) said "such a tactic is
impermissible."

In this case, the prosecutor asked the defendant on
cross-examination numerous questions as to the veracity of
Laura White's, Melissa Terry's, Suzan Phillips, Frank
Parker's and Wendy Poirier's testimony. On the following day
of trial, counsel requested a side-bar conference,which was
granted by the trial judge. At side-bar (without the defen-
dant's presence) trial counsel raised an objection to the
prosecutor's errors the previous day and asked that the
testimony be stricken from the record and also that an
instruction be given (Tr. 13/16-19).  See R.A. #3
The judge had the testimony stricken from the record and gave

Even with the judge's instruction, it cannot be said
that the prosecutor's errors and/or misconduct did not affect
the verdict and substantially prejudice the defendant. The
judge's instruction to the jury only highlighted the prose-

- 52 -

cutor's misconduct. The evidence presented a dual of cred-
ibility, asking a witness to opine as to the honesty of the
other witness' testimony cannot have a non-prejudicial nor
inconsequential effect on the deliberations of the jury. See
Commonwealth v. Long, 17 Mass. App. Ct. 707, 708 (1984).

**THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY DENYING
DEFENDANT'S MOTION FOR MISTRIAL AND DISMISSAL OF THE
INDICTMENT BASED ON LATE DISCLOSURE OF EXCULPATORY EVIDENCE.**

Ordinarily, due process requires that the prosecution
make a timely disclosure to a defendant of exculpatory
material evidence in it's possession. See United States v.
Agurs, 427 U.S 97, 103-114 (1976); Brady v. Maryland, 373
U.S. 83, 87 (1963);

Undisclosed exculpatory evidence is "material" if,
"evaluated in the context of the entire record," it "creates
a reasonable doubt that did not otherwise exist." United
States v. Agurs, 427 U.S. at 112.

"Where the defense has not made a specific request for
the evidence whose disclosure is delayed, the question
becomes whether, given a timely disclosure, the defense would
have been able to prepare and present it's case in such a
manner as to create reasonable doubt that would not have
otherwise existed." Commonwealth v. Wilson, 381 Mass. at 114.

In any event, "it is the consequences of the delay that
matter," United States v. Pollack, 175 U.S.App. D.C. 227, 534
F.2d 964, 973, cert. denied, 429 U.S. 924 (1976).

When a defendant claims a delayed disclosure of un-

- 53 -

expected testimony, he must show prejudice in order to have
the testimony struck or a mistrial declared.
The defendant must suffer prejudice caused by the consequences
of the delay itself, not merely the impact of the substance
of the disclosure. Ibid.

To succeed on these claims, the defendant must show "a
plausible strategic option which the delay foreclosed."
United States v. Devin, 918 F.2d 280, 290 (1st Cir. 1990);

In this case, a general motion for exculpatory evidence
was filed on February 2, 1996, that motion was allowed on
February 15, 1996. No specific request for this exculpatory
evidence was made until after Laura White had made mention of
her psychiatric history during direct- examination at trial,
                        During        side-bar discussion,
the prosecution said that his office was aware of this evid-
ence about her psychiatric history.

As the Court in Agurs, 427 U.S. at 103-114, stated, "due
process requires that the prosecution make a timely dis-
closure to the defendant of exculpatory, material evidence in
its possession." Clearly, from the record, this evidence was
in the presence, or at the very least knowledge of the
prosecutor's office, was material and exculpatory. Had this
evidence been disclosed in atimely manner, the defense would
have been able to            investigate the severity of
Ms. White's illness beyond that which was found included in
the records which were finally disclosed to the defense on
March 10, 1997, during trial, would have been able to show

- 54 -

that Ms. White's drug use was substantial and ongoing, and
that Ms. White's ability to remember, articulate and/or
perceive was severely impaired by her willful ingestion of
marijuana and heroin, The defendant would have been able to
request a competency evaluation and examination of this
witness prior to her testimony.

Under Brady v. Maryland, 373 U.S. 83, 87 (1963) the
prosecution is to disclose exculpatory evidence to the de-
defense and to do so in a generous spirit,

There is a good probability that had defense counsel
been given this information in a timely manner, she would
have been able to call into question Ms. White's credibility
on cross-examination which would have forced the jury to
question the truthfulness of her testimony. Without Ms.
White's testimony the Commonwealth's case diminishes dras-
tically from an already weak case.

**THE BILL OF PARTICULARS WAS INSUFFICIENT IN THAT IT
FAILED TO SPECIFY PARTICULAR DATES AND TIMES FOR
WHICH THE COMMONWEALTH WAS RELYING UPON FOR THE
CRIMES AS CHARGED IN THE INDICTMENT.**

The Court stated that "failure to allege dates of alleged
offenses more precisely than 'between ____and____' raises
"troubling" due process concerns under United States v.
Cruikshank, 92 U.S. 542 (1875), defendant is entitled to
notice "with reasonable particularity of time, place, and
circumstances," considering " all relevant circumstances"
of the case.

A vital function of an indictment is to provide "such
description of the particular act alleged to have been

- 55 -

committed by the accused as will enable him to properly
defend against the accusation. 4 Wharton's Criminal Law and
Procedure, § 1760, at 553 (R. Anderson ed. 1957); accord,
Russell v. United States, 369 U.S. 749, 764 (1962);

                    This principle is derived directly from
the Sixth Amendment's  guarantee of the right of an accused
"to be informed of the nature and cause of the accusation***"
and is basic to the proper functioning of our adversary system
of justice. Without sufficient information to identify that
conduct which the grand jury has deemed adequate to support
an indictment, an accused is at a material disadvantage in
meeting the charge against him.

    In United States v. Abreu, 952 F.2d 1458, 1469 (1st Cir.
1992), the Court stated that, a Bill of Particulars serves
three purposes: to give the accused details concerning the
charges against him, enabling him to prepare a defense; to
prevent double jeopardy; and to avoid surprise at trial.

    In this case, trial counsel filed a motion for Bill of
Particulars, which was allowed by the trial judge.
(see the attached Bill of Particulars  R.A. # 4-5

    The Bill of Particulars failed to state with any parti-
cularity any date the Commonwealth was relying upon in which
the  defendant was involved, individually or as a joint ven-
turer, in any assault or beating which ultimately caused the
victim's death. This omission made it difficult, if not
impossible, for the defendant to determine exactly what
conduct of his the Commonwealth was relying upon for the

                    - 56 -

crimes as charged. The precise dates were necessary in order for the defendant to properly prepare his defense.

Had the defendant been given specific dates upon which the Commonwealth was relying, he could have raised a reasonable doubt in the jury's minds.

A defendant might seek to show that at the time in question he was not at the scene of the crime, in short, to establish an alibi. But unless the defendant can demonstrate that he was not present at the scene during the entire time of the alleged crime in question this is impossible, as the precise dates were not specified.

In this case, the defendant was able to show that he was not present at the scene during specific times and on specific dates, but, without specific dates, or any particularity, the Commonwealth was allowed to rely upon conduct which could not truly be attributed to the defendant in order to obtain a conviction. The Commonwealth itself presented evidence in its case in chief that the defendant was not present during some of the alleged incidents.

**THE TRIAL JUDGE ERRED WHEN HE FAILED TO DISMISS FOR CAUSE TWO VENIRE PERSONS IN VIOLATION OF THE DEFENDANT'S RIGHT TO A TRIAL BY AN IMPARTIAL JURY PURSUANT TO THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.**

the Sixth Amendment, as applied to the States through the Due Process Clause of the Fourteenth Amendment, guarantee the right of a criminal defendant to a trial by an

impartial jury. <u>Duncan v. State of Louisiana</u>, 391 U.S. 145, 149 (1968);                                    "The failure to grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process." <u>Commonwealth v. Susi</u>, 394 Mass. at 786, citing, <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). The presence of even one juror who is not impartial violates a defendant's right to a trial by an impartial jury. <u>Ross v. Oklahoma</u>, 487 U.S. 81, 85-86 (1988); <u>Aldridge v. United States</u>, 283 U.S. 308, 314 (1931)("if any juror was shown to entertain a prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit.")

In exercising discretion determining possible juror bias, however, the "trial court must be zealous to protect the rights of an accused." **Wainwright v. Witt**, 469 U.S. 412, 430 (1985), quoting <u>Dennis v. United States</u>, 339 U.S. 162, 168 (1950).

During impanelment a lunch break was taken at approximately 1:05 P.M. At some point during the lunch break, two female venire persons, Dawn M. Audet (panel 1-5) and Donna Bonney (panel 1-9), somehow got into the Superior Court lock up area where the defendant was being held in a cell with numerous Court Officers and other law enforcement personnel mingling within the lock-up area, obviously in complete control of the defendant's movements. These two venire persons clearly saw the defendant as they walked by and looked

- 58 -

into the lock-up room. The defendant looked directly at them
as they were looking at him.        The defendant immediately
alerted trial counsel of these two venire persons and was
told that counsel had already been informed by the  Court
Officers. Trial Counsel also informed the judge.

Judge Welch had each of the two venire persons brought
before the Court, seperately. Juror number 1-5, Dawn M. Audet
was brought into the courtroom and a conversation  took place:
See R.A. # 6

After this conversation, juror number 1-9, Donna Bonney
was brought into the courtroom and a conversation took place:
See R.A. # 7

It is clear by the record in this case, that numerous
Court personnel reported to the judge that these two venire
persons had gotten into the Court lock-up area where the
defendant was being held. It is clear that these two women
had seen the defendant in a barred cell while handcuffed, at
the rear of the lock-up room which was filled with numerous
Court Officers and other law enforcement personnel. This
viewing of the defendant was extremely prejudicial to the
defendant. It cannot be said that this exposure to seeing the
defendant in these circumstances did not give these women a
preconceived opinion that the defendant was guilty and
possibly even dangerous.

The defendant in this case, says that the trial judge
failed to inquire of the Court Officers as to what actually
happened and whether or not in their opinion the two venire

persons had actually seen the defendant. Nor did the trial judge inquire of the defendant as to what had happened from his point of view.

The trial judge should have dismissed, for cause, both of the venire persons to avoid any possible issues extraneous to the case from entering into the trial. A Court would be hard pressed to say unequivocally that these women were not prejudiced by their viewing even though the trial judge questioned them and they responded in the negative.

Juror number 1-9 Donna Bonney, was later challenged by the Commonwealth. Juror number 1-5 Dawn M. Audet, was not challenged by either defense or the Commonwealth. Defense counsel stated that she did not want to use a peremptory challnge so early in the proceedings. This juror, Dawn M. Audet, sat throughout trial, heard all the testimony and saw all the exhibits and went on to deliberate. The defendant was subsequently found guilty of first-degree murder and kidnapping.

Since juror 1-5 was a deliberating juror, this error cannot be viewed as harmless. See Ross v. Oklahoma, 487 U.S. 81, 85 (1988); Gray v. Mississippi, 481 U.S. 648, 668 (1987) ("because the impartiality of the adjudicator goes to the very integrity of the legal system, the...harmless-error analysis cannot apply").

We have recognized that "some constitutional rights are so basic to a fair trial that their infraction can never be

- 60 -

treated as harmless error." <u>Chapman v. California</u>, 386 U.S. 18, 23 (1967). The right to an impartial adjudicator, be it judge or jury, is such a right.

### A. Violation of the Defendant's Statutory Right to Make a Telephone Call Created a Substantial Likelihood of a Miscarriage of Justice.

The United States Court of Appeals for the Ninth Circuit stated that, "While the right to use a telephone may not per se rise to the level of a liberty interest protected by the procedural mandate of the Fourteenth Amendment, the right of an arrestee not to be held incommunicado involes a substantial liberty interest."<u>Carlo v. City of Chino</u>, 105 F.3d 493 (9th Cir. 1997). It is clear that once a liberty interest has been found, federal law rather than state law dictates how much process is due. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492-93, 84 L.Ed.2d 494 (1985). The Supreme Court has "repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." <u>Vitek v. Jones</u>, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). In <u>Carlo</u>, supra, the State of California grants arrestees the right to place three telephone calls, under section 851.5 of the California Penal Code which clearly established Carlo's right to place telephone calls under state law, supra at 105 F.3d. 496. The Court held that the process provide by the California statute (requiring notice of the right to telephone calls and permitting denial of a requested immediate phone call only in

- 61 -

the case of physical impossibility) is sufficient to satisfy constitutional due process. The Court further stated that, "the California statute creates such a liberty interest." Supra at 105 F.3d 497.

There is no language in § 33A excluding incarcerated persons from the definition of "an arrested person." Under Federal law, an arrest occurs when there is either physical force applied to a suspect or an assertion of authority by a law enforcement official and submission by the suspect. California v. Hodari D., 499 U.S. 621, 626 (1991). It is not necessary that the suspect have been placed formally under arrest. See, Dunaway v. New York, 442 U.S. 200, 216 (1979) (taking custody of suspect for purposes of interrogation constitutes de facto arrest).

Similarly, the plain words of §33A refer not solely to a police station, but generally to a "place of detention having a telephone wherein a person is held in custody." The test for determining "custody" for analogous Miranda purposes is "whether a reasonable person in the suspect's shoes would experience the environment in which the interrogation took place as coercive." See, Stansbury v. California, 511 U.S. 318, 323 (1994). The Court has identified four factors relevant to "custody": (1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect; (3) the nature of the interrogation; and (4) whether, at the time the incriminating statement was made, the suspect was free to leave. Commonwealth v. Bryant, 390 Mass. 729, 737 (1984).   See R.A. # 8

- 62 -

Where a person is already incarcerated when interrogated, the test for determining whether he is in "custody" is whether he is "subject to some restraint in addition to those normally imposed on him by virtue of his status as an inmate." In this context, "[a]n additional restraint is one that places a restriction on the inmate's freedom of action in connection with the interrogation and prevents him from leaving the scene of questioning by placing a further limit on his already restricted freedom of movement." Commonwealth v. Larkin, 429 Mass. 426, 434-435. Cf. Mathis v. United States, 391 U.S. 1, 4 (1968)

In this case there is no evidence that Frederick was ever told that the interview was voluntary. To the contrary, Correctional Officer Brian Scott testified that he awakened Frederick and brought him to be questioned by the troopers, without any explanation or affording him an opportunity to refuse. Hg. 1/148, Tr. 11/25, 28. Frederick testified that he felt he had to go with Officer Scott. Hg. 1/173. It was clear that the investigation was focused on the defendant, since the officers told Frederick at the outset they had specific information regarding his involvement in the death of Paige. Hg. 1/39; Tr. 8/49, 55. He was "allowed" to leave the room only once, escorted, to got o the bathroom. Tr. 8/76, 103.

The record establishes that the denial of the defendant's rights under §33A was intentional.    Despite their experience, there is no evidence that the officers ever informed

- 63 -

the defendant of his right to make a telephone call. To the contrary, substantial evidence exists that they intentionally . Moreover, the officers specifically directed jail staff not to permit Frederick to make telephone calls after they left the jail. Hg. 1/161-62; Tr. 8/83.

Although trial counsel did not raise the issue of violation of §33A at trial, the defendant was entitled to relief under M.G.L. c. 278, § 33E. Any failure to grant relief to the defendant violated his rights to due process. The inculpatory statements obtained by the state troopers were severely damaging to the defendant's case. The prosecution's case, depending upon speculative circumstantial evidence, was hardly overwhelming. Without the defendant's oral and written statements, a jury might well have found the evidence insufficient to convict the defendant of first degree murder.

## CONCLUSION

For the reasons cited herein, the Petitioner prays this Honorable Court will allow his Petition for Writ of Habeas Corpus and order his immediate release.

Respectfully submitted,

*Frederick Perry*
Frederick Perry
MCI-Norfolk
2 Clark St./P.O. Box 43
Norfolk, MA. 02056-0043

- 64 -

RECORD APPENDIX

If malice could be proved by a showing that the
defendant only intended to cause slight bodily
injury, murder could involve less threatening
and less morally blameworthy conduct than in-
voluntary manslaughter. By requiring proof of
grievous bodily injury (and not just bodily
injury) in the second-prong of malice, we
appropriately make criminal liability and
punishment for an act proportionate to the
actor's moral culpability for that act.

R. A. #1

The Fifth Amendment to the Constitution of the United states says in pertinent part:

> "no person shall be compelled in any criminal case
> to be a witness against himself,..."

The Sixth Amendment says in pertinent part:

> "In all criminal prosecutions, the accused shall [    ]
> have the assistance of counsel for his defense."

The Fourteenth Amendment says in pertinent part:

> "Nor shall any state deprive any person of life,
> liberty, or property, without due process of law;
> nor deny to any person within its jurisdiction the
> equal protection of the laws."

R. A. #2

" I will give you an instruction. You may have heard
some questions, and maybe some answers that were put
to those questions by Mr. Fred Perry, yesterday,
concerning the testimony of other witnesses in this
trial, and their answers thereto. There's a rule
in Massachusetts that one witness may not be asked
about the substance of what another witness has
said, or to comment expressly or impliedly about
the credibility of that witness or the truth of
those statements. That evaluation, and the cred-
ibility of witnesses, is exclusively the function
of the jury and not something that a witness can
comment on. Any such testimony, if you recall it,
by Mr. Fred Perry, concerning what other witnesses
said is stricken and should not be considered by
you in any way in deciding this case."

R. A. #3

COMMONWEALTH OF MASSACHUSETTS

FRANKLIN, ss.                                          Superior Court Department
                                                          of the Trial Court
                                                      Indictment No. 95-038

```
_____
|                             |
| COMMONWEALTH OF MASSACHUSETTS |                    AMENDED
|                             |               BILL OF PARTICULARS
| v.                          |
|                             |
| FREDERICK PERRY             |
|_____|
```

        NOW COMES the Commonwealth and responds to the defendant's request for a
Bill of Particulars as follows:

## COUNT I - MURDER

**DATE:**       December 23, 1994 to April 9, 1995.

**PLACE:**      217 Chapman Street, Greenfield, Massachusetts.

**MANNER**      That the defendant, acting individually and as a joint venturer with the
**&**           co-defendants, did assault and beat Billy Paige to death by means of the
**MEANS:**      following acts:
                    Scalping
                    Beatings
                    Fracturing the jaw
                    Partially amputating fingers
                    Stabbing
                    Flaying of the upper right back
                    Causing contusions on the buttocks
                    Causing contusions on the legs
                    Cutting and or slicing of the arms
                    Fracturing the fingers
                    Causing trauma to the upper lip
                    Chipping the teeth
                    Inflicting multiple blunt and sharp force injuries
                    Starving the victim
                    Shocking
                    Burning

000102                                    R. A. #4

The Commonwealth is proceeding on first degree murder based on the following theories:

1)    The murder was committed with deliberately premeditated malice.

2)    The murder was committed with extreme atrocity or cruelty.

## COUNT II - KIDNAPPING

**DATE:**    December 23, 1994 to April 9, 1995.

**PLACE:**    217 Chapman Street, Greenfield, Massachusetts.

**MANNER**    That the defendant, acting individually and as a joint venturer with the
**&**    co-defendants, did forcibly confine Bill Paige to 217 Chapman Street
**MEANS:**    in Greenfield against his will.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS

_____
David A. Angier
First Assistant District Attorney
Northwestern District

_____
Susan J. Loehn
Assistant District Attorney

_____
Thomas M. O'Connor
Assistant District Attorney

000103                    R.A. #5

**COLLOQUAY
BETWEEN JUDGE AND JUROR # 1-5**

The Court:   The Court Officer indicated that apparently
             when you came back from lunch, you were
             directed in the wrong direction back down
             the corridor here; did you see anybody in
             any rooms or being held in any way, shape,
             or form?

The Juror:   No

The Court:   Thank you. You may go back there.

R. A. #6

**COLLOQUAY**
**BETWEEN JUDGE AND JUROR # 1-9**


The Court:   Good afternoon.

The Juror:   Good afternoon.

The Court:   The Court Officer indicated that when you
             were coming back from lunch, you were
             directed in the wrong direction and in
             effect, you went down the hall here. Is
             there anything that you saw or observed
             when you were going down there that would
             have any effect on your ability to be
             fair and impartial?

The Juror:   No, I didn't see anything.


The Court:   Okay, you may return to the panel.

The Juror:   Okay.

R. A. # 7

M.G.L. c. 276, § 33A

Use of telephone in places of detention:

The police official in charge of the station or other place of detention having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. Any such person shall be informed forth-with upon his arrival at such station or place of detention, of his right to so use the telephone, and such use shall be permitted within one hour there-after.

R.A.#8