UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12529-RWZ

FREDERICK PERRY

v.

LUIS SPENCER

MEMORANDUM OF DECISION AND ORDER

October 12, 2006

ZOBEL, D.J.

On March 20, 1997, a jury convicted petitioner Frederick Perry of first-degree murder, based on a theory of extreme atrocity or cruelty, and of kidnapping. He was sentenced to a mandatory term of life in prison. Petitioner filed a timely notice of appeal. Issues raised on appeal included the sufficiency of the evidence, evidentiary rulings, and alleged due process, Fifth Amendment and Sixth Amendment violations. On August 2, 2000, the Massachusetts Supreme Judicial Court ("SJC") affirmed the convictions. Commonwealth v. Perry, 432 Mass. 214 (2000).

Petitioner then filed a motion for a new trial in Superior Court on December 7, 2000 and raised a number of issues for the first time, including ineffective assistance of both trial and appellate counsel, additional evidentiary rulings, prosecutorial misconduct, and the violation of his right to an impartial jury. The motion judge denied the motion on November 27, 2001, without a hearing. Petitioner next filed an application on February 6, 2002, with a single justice of the SJC for leave to appeal the

trial court's denial of a new trial, based on all the claims asserted in his motion for a new

trial. Leave was denied on October 5, 2004.

On November 29, 2004, petitioner filed this petition for writ of habeas corpus

under 28 U.S.C. § 2254. He raises all of the issues asserted in his direct appeal, as

well as the new issues raised in his motion for a new trial and included in his

subsequent application for leave to appeal the denial of a new trial.

Briefly, the facts as determined by the trial court and the SJC are as follows.[1]

Petitioner and the victim, an apparently mentally handicapped man,[2] were initially

friendly. They planned to start a business together and traveled together to Arizona. By

the time of their return to Massachusetts in the autumn of 1994, however, petitioner had

become verbally and physically abusive to the victim. Perry, 432 Mass. at 216. In the

early winter of 1994, petitioner and the victim went to stay at petitioner's mother's home,

where they resided with petitioner's mother, Lena Perry, and his three brothers. Id.

Over the course of the next several months, petitioner and others restrained the victim,

confined him in Lena Perry's home and beat him with their fists on multiple occasions

and at least once with keys and a bicycle chain. Id. at 216-18. One witness noted

burns on the victim's tongue and testified that petitioner told her "they" had burned the

victim with a hot butter knife. Id. at 217. The same witness testified that on another

---

[1] Under federal law, deference is due to the state courts' factual findings unless
rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See discussion
infra Part I.

[2] This assumption is based on the SJC's statement that the victim had
participated in the Special Olympics and attended special education classes.

2

occasion she saw several burns on the victim's arms and that petitioner told her the victim had a burn on his penis.  Id.  Another witness noticed a large burn on the victim's shoulder.  Id.  The evidence at trial showed additional abuse of the victim, including scrubbing him and his wounds with household cleaners and forcing him to drink the contents of a spittoon.  The victim's physical condition deteriorated during this period. He had visible bruises, cuts, swelling of the face and eye and bleeding from the ears, nose and mouth.  He also suffered a visibly apparent loss of weight.  Id. at 218-19.

The victim died in late March or early April of 1995.  Petitioner and his cousin, Clinton Maynard, weighed down the body and disposed of it in a quarry.  Id. at 220.  The victim's body was subsequently discovered on May 23, 1995.  Physical evidence of the victim's body included a fractured hand and jaw, lacerations to the face, bruising of the face, arms, and lower extremities, and flayed skin on the back of the hand.  Id.  The medical examiner estimated that the victim had lost approximately one hundred pounds from the time the beatings began until his death, and testified that the victim would have had difficulty eating with the jaw injury.[3]  Id. at 220-21.

Two police officers interviewed petitioner in jail, where he was serving a sentence on an unrelated matter.  After being provided the Miranda warning, petitioner signed an acknowledgment form and waiver of his rights.  He then proceeded to give the police an oral and a written statement, both of which were introduced against him at trial.  Id. at 232.  In his confession, petitioner attempted to place primary responsibility on others,

---

[3] The SJC noted that, on his return to Massachusetts from Arizona in 1994 and prior to the abuse, the victim weighed approximately 230 pounds.  Perry, 432 Mass. at 216.

but he admitted beating the victim with his fists, a wooden club and dumbbell bars.  Id. at 219.  He also admitted kicking the victim with his work boots, tying and gagging him and shocking him with a frayed electrical cord.  Id.  Petitioner admitted that he was aware that the victim was losing weight and was pretty weak before he died.  Id. at 220. He also admitted that he "slapped" the victim on the day he died and helped dispose of the body in the quarry.  Id.

I.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court adjudicating a habeas petition may grant relief only if the state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The standard is objective, and even an erroneous or incorrect application of federal law is not necessarily unreasonable.  See McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002).  "[I]f it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application."  Id.  This deferential standard of review, however, applies only to claims that were "adjudicated on the merits in state court proceedings."  28 U.S.C. § 2254(d).  Where no such adjudication occurred, federal courts review habeas claims de novo.  See Gruning v. DiPaolo, 311 F.3d 69, 71 (1st Cir. 2002).

As to the second prong of 28 U.S.C. § 2254(d)(2), a federal court hearing a

4

habeas petition must presume that state court factual determinations are correct.  28

U.S.C. § 2254(e)(1).  "For this purpose, 'facts' are defined as 'basic, primary, or

historical facts: facts in the sense of a recital of external events and the credibility of

their narrators.'"  Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).  The petitioner bears

the burden of rebutting this presumption "by clear and convincing evidence," 28 U.S.C.

§ 2254(e)(1), and the presumption applies to factual determinations by both appellate

and trial-level state courts, Rashad v. Welsh, 300 F.3d 27, 34 (1st Cir. 2002).  Petitioner

nowhere states that he has the "clear and convincing evidence" necessary to satisfy §

2254(e)(1).  Accordingly, I rely on the facts as set forth in Perry, 432 Mass. at 215-21,

and Commonwealth v. Perry, Findings and Rulings on Motion to Suppress, Superior

Court Criminal Action No. 95-038 (June 12, 1996) ("Findings").

II.    Sufficiency of the Evidence

        Petitioner argues that the evidence presented by the Commonwealth at trial was

constitutionally inadequate to support his convictions.  On the conviction of murder, he

specifically disputes the sufficiency of the evidence as to joint venture liability, principal

liability, malice, and proximate causation.  He also asserts that the evidence does not

support a conviction of kidnapping.  (Petr.'s Mem. 15-27.)  The SJC considered

petitioner's arguments for each of these issues.  See Perry, 432 Mass. at 221-31.

Accordingly, it adjudicated each claim on the merits for purposes of 28 U.S.C. §

2254(d). The SJC concluded that, "viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt."  Perry, 432 Mass. at 221 (quoting Jackson v.

Virginia, 443 U.S. 307, 318-19 (1979)).  Because the court applied clearly established

federal law, the pertinent question is whether its decision can be considered objectively

unreasonable.  I conclude that the state court reasonably applied federal law in each

instance.

        To prove participation in a joint venture to commit murder, the Commonwealth

must have sufficient evidence to demonstrate (1) that petitioner was present at the

scene of the crime, (2) with knowledge that another intended to commit a crime, and (3)

by agreement was willing and available to help the other if necessary.  Commonwealth

v. Semedo, 422 Mass. 716, 719 (1996).  With respect to joint venture liability, the SJC

noted:

> Witnesses saw the [petitioner] act in concert with Maynard and others – taking
> turns holding and beating the victim.  The [petitioner] participated with Maynard
> in electrocuting the victim.  The evidence also showed that, when outsiders came
> into the [petitioner's] mother's house, various members of the family would block
> the opening to the area of the house where the victim was kept. The [petitioner]
> assisted his brothers and Maynard in disposing of the body.  Evidence that the
> [petitioner] assisted in "avoid[ing] detection and detention" and "attempt[ed]
> actively to conceal evidence" warrants the inference that he continued to be
> involved in the joint venture.  [Citation omitted.]

Perry, 432 Mass. at 223-24.  The SJC reasonably concluded that petitioner's

participation and assistance in inflicting injury to the victim, along with his assistance in

disposing of the body, was sufficient to support a jury finding of participation in the joint

venture.

        Similarly, the SJC found sufficient evidence for the verdict of guilty of first-degree

murder on an individual theory of liability.  Again, it described in detail the evidence of

petitioner's "use of deadly weapons in beating and electrocuting the victim, along with

the medical examiner's testimony as to the cause of death." Id. at 226. The court
rejected petitioner's claim that the acts of third parties caused the victim's death,
because petitioner's knowledge of, and participation, in the many assaults against the
victim precluded his defense that the abuse by other participants constituted an
unforeseeable and independent intervening cause. Id. at 227. In addition, the SJC
noted that, under Massachusetts law, when the conduct of two or more parties
contributes concurrently as proximate causes of death, the conduct of each is a
proximate cause of death regardless of the extent to which each contributes thereto. Id.
at 228.

Petitioner relies on the holding in Commonwealth v. Flynn, 420 Mass. 810 (1995),
which only applies when the evidence is insufficient to show that any defendants' acts
contributed to the victim's death. (See Petr.'s Mem. 19-20.) However, as the SJC noted
in petitioner's case, "the Commonwealth's evidence showed that the victim's death was
caused by the cumulative effect of the multiple beatings, many of which the defendant
perpetrated." Perry, 432 Mass. at 229. Finally, contrary to petitioner's assertion, the
SJC found adequate evidence supporting the inference that petitioner continued to
abuse the victim and participate in the crime in the months up to the victim's death. It
cited petitioner's slapping of the victim on the day of his death and his confession, that
gave no indication of any change over time in his participation in the beatings, and
ultimately, his participation in disposing of the body. Id. at 229-30. It was not
unreasonable for the SJC to find that this evidence could support a jury verdict of
murder on a theory of individual liability.

Under Massachusetts law, malice aforethought requires proof that petitioner, without justification or excuse, intended to kill the victim. Malice may be inferred if "a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." Semedo, 422 Mass. at 720. In light of this standard, it was entirely reasonable for the SJC to conclude that petitioner's use of deadly weapons in beating the victim, his electrocuting the victim, and his ignoring a witness' statement that "if he kept beating [the victim] like that, that [the victim] was going to die" was adequate to establish malice. Perry, 432 Mass. at 222.

Finally, the SJC rejected petitioner's claim that the evidence was insufficient to show a causal relationship between the conduct of the joint venturers toward the victim and his death. It again cited the numerous beatings and incidents of torture of the victim, along with his resulting inability to eat, as consistent with the medical examiner's determination of the cause of death. Id. at 224. Petitioner's argument that the victim might have died of pneumonia, rather than by petitioner's actions, fails given the medical examiner's testimony that it was the beatings and abuse that likely caused the pneumonia. Id. at 225. Thus, the evidence was fully adequate for the jury to find that "the acts of the [petitioner] and his coventurers were the proximate cause of the victim's death," an entirely reasonable conclusion. Id.

Concerning the kidnapping charge, the SJC pointed to evidence that petitioner blocked entry to the stairway leading to the victim, that he or his brother stated that "they" had the victim bound and gagged, and that he prevented the victim from leaving

the house or contacting others.  Id. at 231.  On this record, the SJC reasonably

concluded that, on either a theory of joint or individual liability, the evidence was

sufficient for the jury to find petitioner guilty of kidnapping.

Relief on petitioner's grounds one through four, sufficiency of the evidence, is

denied.

III.    Exclusion of Expert Testimony

A key prosecution witness, Laura White, admitted to long-term drug addiction and

other psychiatric conditions.  As a result of her psychiatric problems, she testified, she

had difficulties in sequencing events chronologically.  Petitioner proffered an expert on

the symptoms of long-term drug use, namely "the inability to remember, to recall, to

perceive, and also ... the ability to confabulate and create."  Perry, 432 Mass. at 103.

The SJC affirmed the trial judge's order excluding the expert, agreeing it served only to

attack the credibility of a fact witness and was therefore inadmissible.  Petitioner

asserts that this ruling violated his Sixth Amendment right to call witnesses in his

defense.  (Petr.'s Mem. 27-30.)  However, a defendant's right to present relevant

evidence does not prevent a state from establishing reasonable rules concerning its

admissibility.  States have "broad latitude under the Constitution to establish rules

excluding evidence" as long as those rules serve a legitimate interest and do not

"infringe[] upon a weighty interest of the accused."  United States v. Scheffer, 523 U.S.

303, 308 (1998).

In this case, the expert had not directly observed the condition he was asked to

describe, and, more important, there was no evidence that White suffered from the

9

condition.  The defense was provided with the records of the witness's psychiatric counseling and was able to cross-examine the witness on her psychiatric condition and her history of drug use.  In addition, petitioner's expert was allowed to testify concerning the ability of individuals with mental disorders like those of the witness to perceive and remember events.  Id.  Thus, the exclusion of the expert testimony did not preclude petitioner from introducing any factual evidence, nor did it prevent him from fully cross-examining the witness.  See Scheffer, 523 U.S. at 316-17.  The decision of the SJC comported fully with federal law and was not unreasonable.  Relief on the basis of ground five is denied.

IV.    Petitioner's Right to Confront Witnesses

Petitioner argues that the admission of Lena Perry's out-of-court statement -- in which she stated that petitioner was "in charge" of the victim -- violated his Confrontation Clause rights.  (Petr.'s Mem. 30-32.)  The trial judge admitted Perry's statement de bene, with an instruction to the jury that they could consider it if they found that the evidence showed she was a coventurer.  Perry, 432 Mass. at 234.  Under Supreme Court precedent, the hearsay statement of an unavailable declarant is admissible if the evidence "falls within a firmly rooted hearsay exception."  Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)), cert. denied, 543 U.S. 1093 (2005).  Massachusetts provides a "traditional and well recognized" hearsay exception which allows the admission of hearsay statements made by a coventurer during the pendency of the joint venture and in furtherance of its goal.  Commonwealth v. White, 370 Mass. 703, 708-09 (1976).  Petitioner does not appear to dispute the

10

validity of the hearsay exception, but he argues that the evidence was insufficient to show that Lena Perry, his mother, was a coventurer.  Because the SJC considered the issue on the merits, I review it under 28 U.S.C. § 2254(d) for an unreasonable application of federal law or an unreasonable determination of the facts based on the evidence.

The SJC concluded that there was sufficient evidence for the trial judge to instruct the jurors that they could consider the statement if they determined it was made as part of the joint venture.  Perry, 432 Mass. at 235.  Lena Perry was present during the months the victim was kept in her home, and it was reasonable for the jurors to conclude that she was aware of his confinement.  Id.  Witnesses testified that she hit the victim with a cane, that she permitted him to be brought to and held in her home, and that she was aware that the victim was being abused by the defendant and others.  Id.  Given this evidence, the SJC's conclusion was reasonable.  Relief on the basis of ground six is denied.

V.     Petitioner's Statutory Right to Use the Telephone

Petitioner argues that the denial of his right under Massachusetts law to use the telephone during his jailhouse interrogation violates a liberty interest protected by the Fourteenth Amendment.  (Petr.'s Mem. 61-64.)  Petitioner's claim for relief rests solely on the interpretation of a state statute; therefore, I must accept the determination of the SJC that Mass. Gen. L. ch. 276, § 33A, providing for the use of telephone in places of detention, "is plainly inapplicable where the defendant already is incarcerated on

another matter."[4]  Perry, 432 Mass. at 238.  Because there was no deprivation of any

state right of petitioner to make a telephone call, there can be no constitutional claim for

relief.[5]  Accordingly, relief on the basis of ground seven is denied.

## VI.   Voluntariness of Petitioner's Confession

Petitioner argues that the use of the verbal statements and the written confession

he gave to state police violated the Due Process Clause of the Fourteenth Amendment.

He alleges that his statements were involuntary because he suffers from mental illness,

including severe paranoia and depression.  (Petr.'s Mem. 32-33.)  Both the trial judge

and the SJC considered petitioner's claim that he did not have the requisite mental

capacity to provide a voluntary statement.  While the trial judge cited to state cases for

the relevant standard, those cases in turn cite to applicable federal law.  A statement is

inadmissible if it would not have been obtained but for the effects of the confessor's

mental disease.  (Findings 8 (citing Commonwealth v. Libran, 405 Mass. 634 (1989), in

turn citing Gibbs v. Warden of Ga. State Penitentiary, 450 F. Supp. 242, 244 (M.D. Ga.

1978), aff'd, 589 F.2d 1113 (5th Cir. 1979)).)  Because the state court applied

established federal law, I review whether the state court decision can be considered

objectively unreasonable.

---

[4] A federal district court is bound to apply a state appellate court's statement of local law.  See Cola v. Reardon, 787 F.2d 681, 688 n.5 (1st Cir. 1986); Tarrant v. Ponte, 751 F.2d 459, 464 (1st Cir. 1985).

[5] Even if a violation of the statute could rise to a due process violation, petitioner fails to explain why the remedy should have been exclusion of his confession, as he advocates.  The case he relies on examined the right of a plaintiff to bring a civil action against a police officer for violating a similar California statue, not the exclusion of evidence.  See Carlo v. City of Chino, 105 F.3d 493 (9th Cir. 1997).

The trial judge evaluated the testimony of both petitioner's and the prosecution's experts on mental capacity. His finding that petitioner's statements were voluntary was based on (1) petitioner's expert's testimony that petitioner was fully mentally capable at the initiation of police questioning and only became incompetent at some later, unspecified point; (2) the prosecution's expert's opinion that petitioner's responses on the MMPI 2 test did not degrade between the first and second halves of the test, suggesting no mental degradation over a period of extended questioning; and (3) the rebuttal of petitioner's expert's testimony by the prosecution's expert concerning the inability of the MMPI 2 test given to petitioner eight months after the police questioning to reconstruct his mental state at the time he was questioned. (Findings 7-9.) On appeal, the SJC determined that "the record amply supports the judge's factual findings" and that "[t]he findings warrant the legal conclusion that the [petitioner] was competent when he gave his statements to the police..." Perry, 432 Mass. at 234. Petitioner does not contest the facts as determined by the trial judge or the reasoning of the SJC; rather, he disputes the courts' conclusions. However, nothing in the record suggests that either court's decision was objectively unreasonable or was based on an unreasonable determination of the facts. Thus, relief on the basis of ground eight is denied.

VII.    Petitioner's Right to an Attorney During Interrogation

Petitioner also claims that state police continued to question him even after he asked to speak to an attorney and therefore any statements he made after that request should have been suppressed. (Petr.'s Mem. 33-34.) Petitioner admits that he received a Miranda warning prior to questioning and that he signed a waiver stating he

13

understood his rights and waived them.  (<u>Id.</u> at 33.)  He alleges, however, that at some

point after questioning began he changed his mind and requested a lawyer.  The trial

judge considered this claim, but concluded that the petitioner never made the request

based on the testimony of the police officers and evidence that petitioner wrote out a

five-page statement while aware that he could stop speaking with the police at any time.

(Findings 7.)  The SJC accepted the trial judge's findings.  <u>Perry</u>, 432 Mass. at 233-34.

Petitioner has not presented any new evidence to rebut the findings of the trial judge,

which I am bound to accept absent clear and convincing evidence to the contrary.[6]

Relief on the basis of ground nine is accordingly denied.

VIII.    <u>Petitioner's Right to Be Present at Sidebar During Juror Voir Dire</u>

      Petitioner asserts that the trial court violated his Sixth and Fourteenth

Amendment rights to a fair trial by granting his defense counsel's request that petitioner

not be present at sidebar during juror voir dire.  (Petr.'s Mem. 34-37.)  Petitioner does

not claim that he was prejudiced by his absence at voir dire, nor does he advance any

claim of bias, prejudice, or improper influence on any of the jurors seated.  Rather,

petitioner argues for a <u>per se</u> finding that relief should be granted whenever counsel

waives petitioner's right to be present at voir dire, but he was not personally questioned

by the trial judge to make sure he did wish to waive this right.[7]

      In response to petitioner's appeal, the SJC declined to adopt a rule requiring

---

    [6] <u>See</u> discussion of 28 U.S.C. § 2254(e)(1), <u>supra</u> Part I.

    [7] Respondent has not provided any response to petitioner's arguments in his
opposition memorandum on this issue.

judges to directly inquire of a defendant if he wished to be present at sidebar, because under Massachusetts law, the defendant has a right to be present only if an appropriate request is made.  See Perry, 432 Mass. at 237-38.  The SJC relied on Commonwealth v. Owens, 414 Mass. 595 (1993), in its decision, as does petitioner (see Petr.'s Mem. 34), but petitioner's reliance is misplaced.  In Owens, the SJC noted that if there is no objection to the defendant's exclusion from sidebar, then the court considers the issue waived.  Owens, 414 Mass. at 604-605.  The SJC, in applying this rule in petitioner's appeal, reasonably applied clearly established federal law -- that a "court need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend."  United States v. Gagnon, 470 U.S. 522, 528 (1985).  Accordingly, relief on the basis of ground ten is denied.

IX.    Ineffective Assistance of Appellate Counsel[8]

Petitioner next contends that counsel on his direct appeal was ineffective because he failed to raise the issue of ineffective assistance of trial counsel and failed to challenge the denial of petitioner's motion to suppress physical evidence.  Petitioner raised this claim for the first time in his motion for a new trial and the superior court judge who responded to the new trial motion considered and rejected it.  (See Memorandum of Decision on Defendant's Motion for a New Trial, November 27, 2001 ("Decision").)  The motion judge, citing the standard in Jones v. Barnes, 463 U.S. 745 (1983), held that appellate counsel had no obligation to raise every nonfrivolous issue

---

[8] Petitioner argues that he received ineffective assistance of trial counsel as well.  See discussion infra Part XI.

requested by the defendant.  He reviewed the SJC's opinion on petitioner's direct

appeal, and noted that petitioner's counsel had "raised a number of appropriate issues

and supported them with plausible arguments," and that the issues not raised "stood a

significantly lesser chance of success on the merits."  (Decision 3.)  Indeed, petitioner

admits that the issue concerning the denial of the motion to suppress evidence was

deleted from the draft brief in order to meet the page limitations, suggesting it was

intentionally deleted to retain more persuasive arguments.  (See Affidavit and

Memorandum of Law in Support of Defendant's Motion for Reconsideration, December

20, 2001 at 2.)  The motion judge appropriately did not attempt to second-guess

appellate counsel's decision on which issues were strongest and should be retained.

The motion judge's conclusion that appellate counsel appropriately chose the

issues to present to the SJC reasonably applied established federal law.  Therefore,

relief based on ineffective assistance of counsel on direct appeal, ground fifteen, is

denied.

X.     Issues Raised for the First Time in Petitioner's Motion for a New Trial

In his motion for a new trial, petitioner raised a number of issues for the first

time.[9]  The motion judge found that, because petitioner could have raised most of these

---

[9] Specifically, in addition to claiming ineffective assistance of both trial and
appellate counsel, petitioner argued that the bill of particulars was deficient because it
failed to specify the dates and time when the crime was committed, that the trial judge
should have declared a mistrial based on late disclosure of alleged exculpatory
evidence, that the prosecutor erred in asking petitioner to comment on the credibility of
the prosecution's witnesses, that the judge committed reversible error when he denied
a motion to suppress evidence and that the trial court's failure to dismiss two venire
persons who allegedly wandered into the lockup area violated his right to an impartial
jury.

issues on direct appeal but did not, they were waived.[10]  (Findings 1.)  Because "[t]he

SJC regularly enforce[d] the rule that a claim not raised is waived ... this rule is firmly

established" as an independent and adequate state ground for resolving claims, and the

"[s]tate procedural default is excused and federal habeas review is permitted only if

there is cause and prejudice."  Gunter v. Maloney, 291 F.3d 74, 79-80 (1st Cir. 2002);

accord Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Circumstances that show

"'cause' under the cause and prejudice test must be something external to the petitioner,

something that cannot fairly be attributed to him."  Id. at 753 (emphasis in original).

Petitioner's counsel is considered an agent on behalf of petitioner, therefore an error by

counsel is not considered external to petitioner unless the error "constitutes a violation

of petitioner's right to counsel, so that the error must be seen as an external factor, i.e.,

'imputed to the State'."  Id. at 754.  Because petitioner did not succeed on his separate

claim for ineffectiveness of appellate counsel as discussed above, the failure or refusal

of his appellate counsel to raise these issues on appeal is attributed to petitioner.  Thus,

grounds fourteen (the alleged deficiency in the bill of particulars), sixteen (the failure of

the trial judge to declare a mistrial) and seventeen (the trial judge's failure to dismiss two

venire persons) are waived and not eligible for review.[11]

---

[10] The motion judge did address the ineffective assistance of appellate counsel claim on the merits since it could not have been brought up on petitioner's appeal.  See supra Part IX.  I examine the claim of ineffective assistance of trial counsel separately because of the circumstances under which it was waived by petitioner.  See infra Part XI.

[11] In his petition, petitioner also claims that his right against self-incrimination, first raised in his motion for a new trial, was violated when he was compelled by trial counsel to testify at his trial (ground 11).  In his supporting memorandum, however,

XI.    <u>Ineffective Assistance of Trial Counsel</u>

The judge responding to petitioner's motion for a new trial also held that

petitioner had waived many of the issues put forth in support of his ineffective

assistance of trial counsel argument, as they could have been raised on direct appeal.

(Decision 1.)  Because the motion judge did not find petitioner's appellate counsel to

have been ineffective, the failure of petitioner's appellate counsel to raise the ineffective

assistance of trial counsel issue is attributed to petitioner, and this waiver would not

normally be reviewed here.  However, it is clear from the exhibits to his petition for leave

to appeal the denial of his motion for a new trial that petitioner's appellate counsel

erroneously told petitioner that he could only claim ineffective assistance of counsel in

his motion for a new trial and <u>not</u> on direct appeal.  (<u>See</u> Defendant's Reply to

Commonwealth's Opposition to Defendant's Petition for Leave to Appeal the Denial of

His Motion for a New Trial, April 12, 2002, Exs. 3 & 4.)  Thus, if I accept the motion

judge's finding of waiver and refuse to examine the ineffective assistance of trial

counsel, petitioner will never have his claim for habeas relief for ineffective assistance

of counsel examined on the merits, even though he urged his appellate counsel on

multiple occasions to raise the issue.  Since the respondent also addressed the issue in

his brief (Respt.'s Opp. at 35-36), I will consider petitioner's claims on the merits.

Petitioner asserts that trial counsel (a) failed to call several witnesses who would

---

petitioner frames this ground as evidence of ineffective assistance of counsel.
Because the direct issue is waived and petitioner presents no evidence of any state
action in his decision to testify, I examine this ground in the context presented in his
memorandum as evidence of ineffective assistance of counsel.  <u>See</u> <u>infra</u> Part XI.

have assisted petitioner's defense; (b) compelled petitioner to testify in violation of his right not to incriminate himself; (c) failed to request an instruction on juror unanimity, and (d) failed to raise petitioner's right to make a telephone call in his motion to suppress.[12]  Petitioner again raised these issues in his Motion for Leave Pursuant to G.L. c. 278 § 33E to Appeal Denial of Motion for New Trial, submitted to a single justice of the SJC on March 8, 2002.  The justice evaluated petitioner's motion under a "substantial risk of miscarriage of justice" standard, and found that none of the issues raised met this test.  (Memorandum and Order, October 5, 2004, at 3.)  This standard, however, goes only to the state law question and does not address the federal constitutional law issue.[13]  Accordingly, I review petitioner's claims of ineffective assistance of counsel de novo under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a defendant alleging ineffective assistance of counsel to demonstrate both that (1) "counsel's representation fell below an objective

---

[12] In his petition, petitioner cites the failure of his trial counsel to raise the issue of an insufficient bill of particulars as also supporting an ineffective assistance of counsel ground, but in his supporting memorandum frames this ground as a direct violation of his right to prepare a defense.  As discussed supra Part X, this issue was not brought up on appeal and thus was waived by petitioner.  In any event, the bill of particulars cited by petitioner (Petr.'s Mem. R.A. #4) appears to provide adequate notice of the relevant circumstances of the case, given the extended period of abuse leading to the victim's death.  Petitioner has made no claim that any information missing from the bill of particulars "prejudiced his ability to prepare his defense, created surprise at trial, or violated his protections against double jeopardy."  United States v. Abreu, 952 F.2d 1458, 1469 (1st Cir. 1992).  Under these circumstances, a decision not to object to the bill of particulars would fall well within the reasonable discretion of his trial attorney.

[13] See, e.g., Puleio v. Vose, 830 F.2d 1197, 1200 (1st Cir.1987); McCown v. Callahan, 726 F.2d 1 (1st Cir.1984).

standard of reasonableness;" and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694.

The Supreme Court has refused to set detailed rules for determining what conduct is reasonable, noting that any such rules "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89. Indeed, the Court cautioned against second-guessing counsel's assistance in hindsight after an adverse sentence or conviction. Id. at 689. Accordingly, the Court requires a defendant to "overcome the presumption ... that the challenged action might be considered sound trial strategy." Id. (internal quotation marks deleted). Petitioner has failed to overcome this presumption.

The record is devoid of evidence demonstrating that exculpatory evidence was not presented to the jury or that petitioner was forced to testify. Indeed, petitioner's own argument suggests reasons why competent trial counsel may have felt the witnesses described by petitioner would do more harm than good if allowed to testify. Petitioner notes that one witness was "awaiting trial on an unrelated matter," while another was a co-defendant. (Petr.'s Mem. 38-39). Even if petitioner's co-defendant was willing to give up her Fifth Amendment right not to testify,[14] trial counsel could have reasonably decided that the jury would have found neither witness credible. The third witness advanced by petitioner apparently could only testify to inadmissable hearsay. (Petr.'s

---

[14] Apparently she was not, since this is the same unavailable declarant whose hearsay testimony was challenged in ground six.

Mem. 39-40.)  In addition, given the overwhelming evidence against petitioner described by the SJC, including his own confession, trial counsel's recommendation that petitioner explain his role by testifying was reasonable, particularly where, as petitioner claims here, he believed his culpability did not rise to the level of coventurer.

Trial counsel's failure to raise the issue of the telephone call also fails to meet the standard of unreasonableness.  Trial counsel's Supplemental Memorandum of Law in Support of Motion to Suppress Statements, May 15, 1996, appears to be well researched and written.  Counsel may have believed (as the SJC confirmed) that the statute did not apply, or may have concluded that, with no evidence that petitioner actually requested telephone access, a request to suppress petitioner's confession on this basis was the poorer of the arguments available.  Petitioner presents no evidence to overcome the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.

Similarly, petitioner has not shown that trial counsel's decision not to request a unanimity instruction was unreasonable.  The cases cited by petitioner are inapposite. (See Petr.'s Mem. 43.)  For example, Andres v. United States concerned jury instructions which allowed a jury to return a qualified verdict in a death penalty case. 333 U.S. 740, 752 (1948).  Petitioner fails to establish that a specific unanimity instruction on specific acts is required where petitioner is charged with committing a murder based on a series of acts of abuse and mistreatment over a period of time. Counsel cannot be faulted for failing to request a specific unanimity instruction where its necessity was unclear.

21

In any event, petitioner has failed to demonstrate that there is a reasonable probability that the verdict would have been different had the alleged errors not occurred.  Given his confession, the physical evidence of abuse and the Commonwealth's witnesses, the result of the trial is highly unlikely to have been affected by the course petitioner now advocates.

Based on the record before me, I cannot conclude that petitioner did not receive reasonable representation, or that there was a reasonable probability of a different outcome had the issues listed by petitioner been brought up at his trial.  Relief based on ineffective assistance of trial counsel, grounds eleven, twelve and thirteen, is denied.

Accordingly, the petition for Writ of Habeas Corpus is denied as to all claims. Judgment may be entered for the respondent.


  October 12, 2006          /s/Rya W. Zobel
         DATE                RYA W. ZOBEL
                             UNITED STATES DISTRICT JUDGE